**FESSENDEN v. COE, Commissioner of Patents.**

**No. 6916.**

United States Court of Appeals for the District of Columbia.

Decided Aug. 22, 1938.

I. R. Paris, of Washington, D. C., and Ezekiel Wolf, of Boston, Mass., for appellant.

R. F. Whitehead, Solicitor, and W. W. Cochran, Law Examiner, United States Patent Office, for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia dismissing, after a hearing on the merits, a bill of complaint filed by the appellant under Rev.Stat. § 4915, as amended, 35 U.S.C.A. § 63. The appellant Fessenden, hereafter referred to as Fessenden, sought by the bill to compel the appellee, the United States Commissioner of Patents, hereafter referred to as the Commissioner, to issue a patent on Fessenden's application No. 532,488 for a patent on high tension insulators.

In the Patent Office the Board of Appeals had rejected all of Fessenden's claims as not patentable over the prior art, and claims 5, 9, 23 and 24 upon the additional ground that they were not disclosed by the application. In the trial court the only claims urged were 5, 6, 9, 10, 11, 14, 15, 16, 23 and 24; the court determined that there was a sufficient disclosure as to claims 5, 9, 23 and 24, but that none of the claims were patentable over the prior art.

At the argument upon the appeal and by memorandum thereafter filed, Fessenden by his counsel abandoned the appeal as to all

---

of his claims except 5, 23 and 24. No objection seems to be made by the Commissioner to the ruling of the trial court that these claims were sufficiently disclosed by the application. The questions on the appeal are therefore reduced to the one, whether or not the trial court erred in holding claims 5, 23 and 24 not patentable over the prior art. Among other considerations urged below and here in respect of this issue is the proposition that Fessenden's claims 23 and 24 are identical with claims 1 and 5 in the application of one Frank W. Peek, Jr., No. 440,154, and that Peek was granted a patent No. 1,741,333, on those claims over Fortescue, No. 1,259,385, one of the references held by the Board of Appeals to anticipate Fessenden.

Fessenden's claims 5, 23 and 24 read as follows:

"5. In high tension insulators, a conductor to be insulated, an insulator string embodying a plurality of small capacity insulators connected in series, and a potential equalizing conductor electrically connected with said conductor to be insulated and spatially related to a unit of said insulator string in immediate proximity to said conductor to be insulated, whereby said unit is relieved from undue electrical stress and such stress distributed across the units of the string, and whereby said conductor to be insulated is thereby enabled to withstand a higher voltage.

"23. A string of more than two interconnected insulating units adapted to support an electrical conductor, said string being provided with electrostatic flux controlling means conductively connected to the conductor and proportioned and situated about the insulating units so as substantially to compensate directly for the leakage electrostatic flux of the string, whereby uniform voltage distribution results.

"24. The combination with a line conductor of a plurality of insulating units joined in a string by metallic connections and supporting said conductor, and a conducting member conductively connected to said line conductor and proportioned and located in the electric field adjacent the line end of said string to supply directly to each unit a capacitance current substantially equal to the capacitance current from the unit to the ground."

It appears from Fessenden's specification, which included a diagram the pertinent portion of which we reproduce herein as Illustration A, that in certain wireless work he had been faced with the problem of insulating voltages as high as a million volts, the insulators then in common use being for voltages of about fifty thousand. Transmission line insulators for the latter voltages were unsatisfactory because of their weight and the large charging current required by them. Fessenden, through mathematical and experimental work:

"  .  .  .  ascertained and discovered that the difficulty with the standard insulators was that they were too large and had too much capacity to each other and to ground, and had other defects; and was led to invent a new type of insulator, consisting of a string of small capacity insulators in series with each other.  .  .  .

"Still further pursuing his researches, applicant found that on account of the uneven distribution of the lines of force in strings of such insulators, there was a tendency for the first insulator in the string to break down before the others, owing to excessive strain on that insulator; and that when this occurred, the excessive strain was transferred to the next, so that they all broke down, one after the other, like a pack of cards falling down.

"Applicant discovered (Scientific American, April 30th, 1921) that this could be overcome by putting stress equalizing means, in the form of shields, in the neighborhood of the insulators, & that the stresses could be equalized and the insulators would break down substantially simultaneously.

"The shape of these shields can be calculated mathematically . . . . But in most cases it is sufficient and easier to determine the shape experimentally."

**Illustration A**

Fig 1.

Fig 2.

Fessenden's insulator is composed of a string of insulating units of small capacity (13, 13, 13, 13 in Figure 1 of Illustration A and 14, 14, 14, 14 in Figure 2) joined in series by metallic conductors (12, 12, 12 in Figure 1 and 15, 15, 15 in Figure 2) with electrostatic shields (17, 17 in Figure 1 and 18 in Figure 2) in the form of rings of circular torus section as shown in Figure 1, and of a barrel of sheet iron as shown in Figure 2. The specification showed the shield (18 in Figure 2) as having a rounded lip, 19.

An expert witness, Dr. Greenleaf Whittier Pickard, testified in behalf of Fessenden. After explaining the specification and the operation of the insulator, Dr. Pickard said:

"The object of these conducting members [the shields] and their disposition is to change the distribution of current so that the field or strain is distributed more uniformly over the string of insulators and so that each insulator in the string is made to carry its proper load. The field existing between two separated charged bodies, such, for example, as a high tension high transmission line on the one hand and ground on the other, while invisible, takes the form or shape of the familiar field between the poles of a magnet, which may be made evident by iron filings, as every schoolboy knows. That is, it consists of a concentration of lines of force or field at the magnet poles which spreads out, becomes less dense, that is, in the space between.

"So, referring to Figure 1, if we were to remove the metallic elements or shields, 17, and were to impress a higher difference of potential of voltage between the metal or conducting terminals, 12-12, we would have a field in space around the insulators, 13, which would be concentrated at the end structures, right and left in the drawing, and would be diffused or weaker in the space surrounding and passing through the ones in the middle. That would mean that the end structures would be subjected to a greater difference in potential than the middle insulating structures, and so would be more apt to fail or break down or 'flash over', as the technical phrase is. The same of course is true in the structure shown in Figure 2, which is merely a different form."
Dr. Pickard also explained that in order to function the shields would have to be connected to points of opposite potential, that is, the ground upon one side and the high tension line upon the other. He then continued:

"The operative part of the shield, 17, in Figure 1, so far as the protection of the insulator string inside is concerned, is the rings shown at the right hand side of the left hand Figure 17 support and the left hand side of the right hand Figure 17 shield, because the electro-static field produced by these shields 'is principally centered upon the adjacent ring terminals of these shields.'"

The references upon which Fessenden's application was denied in the Patent Office and upon the basis of which the trial court found the application unpatentable over the prior art were Randall et al., No. 1,129,521, Fortescue, No. 1,259,385, and Thordarson, No. 1,288,751. It is necessary to discuss only the first two. The patent to Randall was for a single insulator as distinguished from a string insulator with a plurality of units. This patent was originally significant in two aspects: first, in that the individual units of the insulator of Fortescue, which we shall hereafter discuss as the most important reference, are like the Randall single insulator; and second, in disclosing the use of a rounded rim on a shield. The second aspect we need not now consider because it was involved only under the claims abandoned by Fessenden. The Randall insulator is described in the specification in terms of a diagram, which we reproduce herein as Illustration B, as follows:

**Illustration B**

"One-half of the insulating body is shown in each of the figures in cross-section, and the electric field existing in the insulating body is represented in the other half by broken lines.

"In the device of Fig. 1, a conducting plate 1, or other suitable supporting structure, is provided with an aperture through which a rod 2 projects, the upper end of the rod being enlarged, and being preferably in the form of a sphere. The lower end of the rod 2 is provided with a clamp 3 whereby a conductor or line wire 4 is secured to and supported by the said rod. The upper end of the rod is surrounded by a cap or shield 5, the main portion of which is preferably substantially spherical and the inner face of which is substantially parallel to the enlarged upper end of the rod 2. The cap or shield 5 is preferably secured to the supporting plate 1. The space within the cap or shield 5, between it and the rod 2, is filled with a suitable insulating compound or body 6 that is extended so as to surround a part of the rod 2 below the supporting plate 1, the exposed portions of the said body being shaped to substantially conform to the direction of the lines of force of the static field existing between the rod 2 and the surrounding conducting parts. The cap or shield 5 protects the insulating body from the weather and also mechanically guards it, and it is so shaped as to influence the electric field in the insulating body. In the preferred form of the device, the shield is so shaped relatively to the enlarged end of the rod 2 as to cause the lines of force of the said field, or the greater portion thereof, to be straight, whereas the lines of force representing the field between the diverging portions of the rod and the surrounding parts is curved, all substantially as represented in the right-hand portion of Fig. 1."

More briefly stated, the Randall patent discloses the use of a metallic shield or cap— to which we hereafter, for convenience in differentiating it from the larger terminal shields of Fortescue and Fessenden, refer as cap rather than shield—purposed to influence as a conductor and because of its shape the electrostatic field within the insulating material proper; and the patent also discloses the idea of shaping such part of the insulating material as is outside the cap so that it will conform to the direction of the lines of force of the electrical field existing between the rod which extends into the center of the insulator and the sur-

rounding conducting parts. Discussing this aspect of the Randall insulator, Dr. Pickard said:

"There is no question at all of the utility and value of this Randall patent. It does precisely what it claims. It has value for a single insulator, and so in itself is not relevant to the Fessenden application in which two or more insulators in series or in a string are specified."

The specification of the Fortescue patent, which includes a diagram which we reproduce herein as Illustration C, dis-

### Illustration C

closes a suspension-type insulator consisting of a string of Randall type insulator units with two terminal shields, 16 and 18. Fortescue had recognized the problem presented by unequal distribution of the electrical stress along the units of a string insulator, and in respect of this said in his specification:

"My invention comprises a system of condensers connected in series relation to enhance the insulating properties of which, it is highly desirable to obtain uniform divisions of potential difference between the elements 5. In order to increase the insulation strength of my insulator, the external electrostatic field surrounding the same should be so distributed as to insure a sub-

stantially uniform surface distribution of the electrostatic stresses imposed thereupon. For this purpose, I have provided an upper conducting member 15 having a conducting extension 16 of discoidal shape and a lower conducting member 13 having a conducting extension 18 of discoidal shape.

"It is desirable, for maximum efficiency, and in order that my improved insulator may be of minimum length, that the external electrostatic field be substantially uniform and agree with the division of potential between the individual elements 5 comprised in the structure 4. The electrodes 16 and 18 are provided to approximate the result which would be obtained by bounding the insulating support 4 by infinite parallel conducting planes perpendicular to the axis of the insulator. As above mentioned, this will effect a substantially uniform distribution of the electrostatic field external to, and surrounding, the insulator 4."

It will be sufficient to consider the effect of the references largely in terms of Fessenden's claim 5—this for the reason that claims 5, 23 and 24 are, although couched in somewhat different terms, substantially similar except for the fact that claim 5 recites "a plurality of small capacity insulators connected in series" while 23 and 24 do not refer to the capacity of the insulators. Since the Randall patent does not disclose a string insulator with a terminal shield or shields designed to equalize the electrostatic pressure along a string of units, it need not be discussed except as we comment upon it in explaining and commenting upon Fortescue. We have to determine finally therefore only whether Fortescue anticipates Fessenden.

It appears from the foregoing description of the Fessenden application and the Fortescue patent that they are alike in the following three respects: each deals with a high potential conductor to be insulated; each discloses a string of insulating units; and each discloses the use of a conducting member or members, in the form of a shield, purposed to influence the electrostatic field surrounding the insulator in a manner resulting in equalization of the electrostatic stress along the several units of the insulator with consequent elimination of undue stress upon the first and last units of the string. No emphasis is placed by either Fessenden or the Commissioner upon the disclosure in both Fessenden and

Fortescue of the string type of insulator as distinguished from an individual unit insulator. The position of the Commissioner is that Fortescue anticipates Fessenden because of the third similarity just stated. But Fessenden contends that there are three material differences between his claims and the disclosure of Fortescue.

Fessenden points out first that the units of the Fortescue insulator have individual metallic caps which are conductors having a certain potential, and that these influence the electrostatic field within the insulating material as explained in Randall, whereas Fessenden's claim 5 makes use of no such caps; and Fessenden contends that on this account the terminal shields of Fortescue do not operate as does his own shield. Admitting that Fortescue's shields accomplish the same ultimate result as the shield of Fessenden, Dr. Pickard nevertheless, in respect of the difference thus urged by Fessenden, testified:

"The Fortesque arrangement differs from that arrangement shown and claimed in the Fessenden application in two ways. In the first place, the equalization of strain on the separate insulator units of Fortesque is not accomplished directly by the end shields or elements 16-18. It is accomplished, if at all, indirectly; that is, by the conjoint action of these shields, 16 and 18, and the smaller or individual insulator shields."

But Dr. Pickard further said upon the same subject:

"Now, referring to Fortesque, the flux is not distributed throughout the series. It is a step-by-step matter. The distribution by the shields 16 and 18 is not on the surfaces or through the insulators themselves directly; it is, first, to the opposed faces of the inner shields acting in conjunction with the end shields 16 and 18. The potential is not uniformly distributed or adjusted or equalized in Fortesque across the string of insulators themselves. It is adjusted step by step across these inner shields.

"The Court. Does he prevent the collapse of the outer insulator and thus a progressive collapse of all of them?

"The Witness: He would get that result because he does state in the specification and show in the drawing a means of adjusting the potential across these units as a whole, so that the end units in Fort-

esque bear approximately the same strain or have the same voltage across them as the inner units.

"The Court. In the instant patent it arrived at that result in what way? Just tell me that again, please.

"The Witness. Fessenden reaches that result directly, namely, by equalizing the field or distributing the electrical strain uniformly across every part of the insulator string; so that referring to the insulator string in Fessenden, the field outside of and through the insulators themselves is made equal at all points. In Fortesque the equalization is not across the entire line or at all points.

"The Court. At the same time?

"The Witness. At the same time. It is step by step; that is, across each of these metal units first. Then the voltage is transferred to the insulator itself. In Fortesque it requires the conjoint action of the end shields and the inner shields, whereas in Fessenden the end shields do the whole work."

We think it fairly appears from the whole of the testimony of Dr. Pickard upon this topic that the effect of the terminal shields in Fortesque is to equalize the electrostatic stress across the faces of the insulator units in the string and that this is substantially what the shield in Fessenden accomplishes, and we think it fairly appears further that the equalizing process is effectuated in Fortesque by the terminal shields alone and that the only function of the caps upon the insulator units in Fortesque is to transfer the equalized voltage to the insulator material itself in the manner and with the effect described in Randall. We conclude therefore that the function of the caps of the insulator units in Fortesque cannot be said so to differentiate Fortesque from Fessenden as to avoid anticipation by Fortesque in respect of the structure and effect of the terminal shields in Fortesque and the terminal shield of Fessenden.

Fessenden urges as a second material difference between his claim 5 and Fortescue that the insulating units of claim 5 are all low capacity whereas those of the Fortescue patent are, because of the caps upon them, of high capacity. On this subject Dr. Pickard testified:

"Secondly, the Fortesque insulator elements are elements of high capacity. They are of high capacity because the insulators with the metal members form condensers, and condensers in which the metal or conducting armatures or plates of the condenser are relatively of large area and of relatively small separation through the dielectric or insulator. So in consequence this type of insulator would have a high charging current when used on a power transmission line, and a still higher charging current or displacement current through the string when used at the higher frequencies of radio."

But Dr. Pickard also testified that the small capacity type of string insulator units were not in themselves part of the invention claimed by Fessenden. In respect of this Fessenden seems again to contend that Fortescue could not accomplish the effect of equalizing the electrostatic stress without the metallic caps upon the insulator units, which caps as pointed out necessarily cause the units to be of high capacity. But as we have already said, the sole function of the caps is to transfer the voltage to the insulator material itself after the terminal shields have accomplished their effect of equalization.

Fessenden urges as a third difference that Fortescue makes use of two terminal conducting shields, one connected to line and hence at line potential, and the other to ground, whereas Fessenden's claim 5 mentions only one shield conductively connected to line. From the specification and Figures 1 and 2 of Illustration A and from the testimony of Dr. Pickard, it appears that Fessenden contemplated the possible use of either two terminal shields (Figure 1), or of only one shield (Figure 2). However, since claims 5, 23 and 24 refer to but one shield, we shall assume for the purpose of the immediate discussion that but one shield is contemplated. Peek, who as above set forth was granted a patent for certain claims identical with Fessenden's claims 23 and 24, relied on this same difference in the number of shields in distinguishing his claims from Fortescue. It appears from Fessenden's brief that Peek explained that his single shield conductively connected to line and at line potential operated to supply to each unit of the insulator string a capacitance current equal to the capacitance current between the unit and the ground, thus neutralizing the effect of the latter current and thereby causing a substantially uniform distribu-

tion of potential between the units of the string; and Peek urged that Fortescue required his two terminal shields to be large enough to approximate the effect of two infinite parallel conducting planes, perpendicular to the axis of the insulator string, which would completely shield the insulator units from the electrical effect of the ground; according to Peek, this caused a more or less uniform electrostatic field to exist between the parallel planes and resulted in an absence of capacitance currents between the insulator units and the ground; and Peek contended and apparently convinced the Patent Office that the structure and principle of Fortescue's device thus sufficiently differed from his to justify a patent over Fortescue. Fessenden vigorously urges therefore that consistency requires the allowance at least of his claims 23 and 24 as patentable over Fortescue because they are identical—and it is so stipulated—with Peek's claims. But while the decision of the Patent Office on the Peek application and the reasons underlying the decision may have persuasive value on the question of the patentability of Fessenden's claims, the decision is not controlling. Two wrongs cannot make a right. It was proper for the Commissioner to reject Fessenden's claims 23 and 24 as anticipated by Fortescue, notwithstanding that identical claims had been patented to Peek over Fortescue, if upon mature consideration he concluded such claims to be not properly patentable over Fortescue. This point has been definitely determined for this jurisdiction in In re Orcutt, 32 App. D.C. 345, 1909.

And we think that the action by the Patent Office on the Fessenden application was correct. Peek and Fessenden on the one hand and Fortescue on the other accomplish an identical result of equalizing electrostatic stress along the units of a string insulator, and each does so by the introduction into the electrostatic field of a conductor or conductors. The difference between Peek and Fessenden on the one hand and Fortescue on the other is we think rather a difference in the inventors' rationalizations or explanations of the effect produced, whether by one or two conductors, than such a difference in structure as has material relation to the effect obtained.

Affirmed.