58 CCPA
**Application of John B. RIDDLE, Arndt B. Bergh and Charles O. Forge.**

**Patent Appeal No. 8457.**

United States Court of Customs and Patent Appeals.

March 11, 1971.

Karl A. Limbach, John P. Sutton, Limbach, Limbach & Sutton, San Francisco, Cal., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

<hr>

1. Serial No. 532,577, filed March 8, 1966, for "Method for Recognizing Printed Currency" (designated a continuation-in-part of Serial No. 149,799, filed August 23, 1961, and issued on October 25, 1966, as patent No. 3,280,974).

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of the sole claim in appellants' application [1] under 35 U.S.C. § 103 as obvious in view of Smith.[2]

## THE INVENTION

The invention relates to a method for determining whether or not a sample paper bill is a genuine Federal Reserve Note. Those notes, said to constitute most of the paper money now in circulation in the United States, have one side printed in green ink. The other side, printed mostly in black ink, has a seal imprinted on it to the left of the portrait, which seal denotes the Federal Reserve Bank that issued the note. While the major portion of the printing on the black side, including a pattern of lines forming the background for the portrait, is printed with magnetic (magnetizable) ink, the ink used to impress the seal is non-magnetic. Appellants' method utilizes these characteristics in a manner readily apparent from the claim, which reads:

> 1. The method of recognizing a sample bill as a valid piece of U. S. paper money which comprises: magnetically analyzing the ink in a predetermined area on the obverse side of the sample bill; magnetically analyzing the Federal Reserve Seal on the sample bill, and rejecting the sample bill as a valid piece of U. S. currency where magnetic ink is either not found in said predetermined area or is found in the area of the Federal Reserve Seal.

## THE REJECTION

Smith states that certain portions of the paper currency of the United States

<hr>

2. Patent No. 3,245,534, issued April 12, 1966, on an application designated a continuation of an application filed October 27, 1959.

are printed with ink that has magnetic properties. In particular, the reference points out that the backgrounds of darker tone which set off the portraits distinctive of the denomination of the currency are formed from black vertical and horizontal lines, which are "usually" formed from such ink. The patent discloses a method for recognizing authentic bills which includes testing to determine whether the aforementioned background area of a sample has the expected magnetic properties.

On the basis of the Smith disclosure, the examiner took the position that it would be obvious to add to the Smith test of an area known to be printed in magnetic ink, the additional step of testing for the presence of magnetic ink in any area known to be printed in non-magnetic ink, including the area of the Federal Reserve Seal. In sustaining the rejection, the board commented:

> We are struck by the obviousness of appellants' method from the very fact that bills, inked in the manner referred to by appellants, clearly dictate appellants' method of examination. To determine whether or not bills are properly inked, one would obviously not only test the known magnetic areas for traces of magnetism, but also the non-magnetic areas for a determination of the absence of magnetism. Appellants state that a counterfeiter would assume that the black seal to the left of the President's photograph is printed with magnetic ink because it is printed with black ink. We fail to see how this argument supports patentability. It is equally obvious to us that the green seal to the

right of the photograph might be selected or any of the other numerous printed areas of a bill. To be certain one may well examine all portions of a bill.

The Smith et al. patent discloses a method of detecting magnetic ink on bills and although its specific application is to the background of the President's photograph, the broader aspects of this disclosure are suggestive of testing any or all areas for magnetism, including those known to be free of magnetic ink.

## OPINION

■ We agree with the examiner and the board that the claimed method is obvious in view of Smith. That patent not only teaches that portions of paper currency are printed in magnetic ink, but also that "it is the ink in the black face that is magnetic." It also states that the magnetic properties of the ink are "limited" and discloses that the test apparatus be designed to reject any spurious bills that have "unduly strong magnetic ink" as well as any that have "insufficiently strong magnetic ink." With Smith's disclosure before him, a person of ordinary skill in the art who wishes to design more sophisticated detection equipment would find it obvious to first make a study of the magnetic properties of the full area of authentic bills. Appellants emphasize that Smith does not disclose that any portions of bills printed in black ink are non-magnetic. However, visual inspection of the bills, coupled with readily available information regarding the making of paper money,[3] would lead promptly to the

3. The Commissioner's Brief points out:
   The engraved plates are expensive, such that it is not practical to provide special plates for each federal reserve bank * * *. The Federal Reserve Seal is therefore applied to sheets which have already been printed with the engraved design. Other overprintings include the Treasury Seal, District numbers, series date, signatures and serial numbers. The popular guided tour through the Bureau of

Printing and Engraving could reveal the foregoing. Alternatively, the World Book Encyclopedia discloses as much. Under the topic "Money", an informative plate on "How Paper Money is Made" indicates in one pictorial step that "A flat bed press prints the notes in sheets of twelve," and in a subsequent step that "The Numbering Machine numbers, seals, signs, and cuts apart the printed notes."

realization that certain areas on the black side, including the Federal Reserve Seal on Federal Reserve Notes, are printed in separate operations from the basic pattern which includes the portrait. Separate printing suggests the very real possibility that inks of different magnetic properties were used in those areas. Upon the survey revealing that the seal and other areas were printed in non-magnetic ink, the step of testing one of those areas for magnetic properties to augment the Smith test would be obvious.

Appellants also refer to an affidavit they submitted asserting that tests of four bills, described as "all of the samples of magnetic counterfeits in the possession of U. S. government", showed that two had no magnetic ink at all and that on each of the other two all of the green ink was non-magnetic and all of the black ink was magnetic. While those results are evidence of operativeness of the present method, they do not demonstrate unobviousness.

It is also asserted by appellants that claim 16 in the patent which was issued on their parent application [4] "covers the same broad method as the appealed claim" and was allowed over a reference having a disclosure of "the same legal effect" as the Smith patent. Although appellants seem to disclaim specific reliance on *res judicata* and estoppel, they present extensive argument, intertwined with citations of decisions, for a proposition that would require reversal of the present rejection because of the allowance of aforementioned claim 16.

We cannot agree with such a proposition. All of appellants' cited cases are factually distinguished from the present case and none is precedent for holding that the allowance of a claim by an examiner in a patent is a bar to the rejection of a claim in an application to substantially the same invention on substantially the same art considered in the patent prosecution. Thus, in Pattinson v. Watson, 148 F.Supp. 951 (D.D.C.

1957), the claims held patentable were in an application for reissue of a patent *which issued as the result of a prior determination of the same court.* While the court, after disposing of new references relied on in rejecting the reissue application, commented that its prior decision "controls this case" insofar as the references in the previous case were concerned, it additionally found the reissue claims patentable over those references. Any possibility that *Pattinson* could properly be considered *controlling* in the present case would appear to be eliminated by Fessenden v. Coe, 69 App.D.C. 193, 99 F.2d 426 (D.C.Cir. 1938). In the latter case, the appeals court upheld the rejection of claims of an application which were identical with claims allowed over the same prior art in a patent to another inventor, stating in doing so that "two wrongs cannot make a right."

The decision of the Board of Appeals is affirmed.

Affirmed.