58 CCPA

**Application of John R. LEWIS.**
**Patent Appeal No. 8471.**

United States Court of Customs and Patent Appeals.
June 10, 1971.

Marion C. Staves, Wilmington, Del., atty. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

Lewis appeals from the decision of the Patent Office Board of Appeals sustaining the rejection of all the claims in his application[1] as obvious in view of the prior art under 35 USC 103.

## THE INVENTION

The claims on appeal define a process for preparing cellular,[2] cross-linked[3] polypropylene having a uniform, i. e., uniform in size, closed cell structure, with at least 70% of the cells closed, having a density of less than 12 lbs./cu. ft. and being dimensionally stable at high temperatures. The specific steps of the claimed process comprise

(1) blending stereoregular polypropylene[4] with a blowing (i. e., foaming) agent and 0.01 to 2% of an aliphatic poly (sulfonazide) and

(2) heating the blend to release gas from the blowing agent and to cause the poly (sulfonazide) to cross-link the polypropylene.

The claims differ from one another only in limitations on the specific type or amount of the poly (sulfonazide).

## THE PRIOR ART

The following United States patents were relied on below as representative evidence of the prior art:

| | | |
|---|---|---|
| Ott | 2,532,243 | Nov. 28, 1950 |
| Cooper | 2,927,904 | Mar. 8, 1960 |
| Hohenberg et al. | 3,017,371 | Jan. 16, 1962 |
| Breslow et al. | 3,058,944 | Oct. 16, 1962 |
| Yokose et al. | 3,072,972 | Jan. 15, 1963 |
| Pooley et al. | 3,098,832 | July 23, 1963 |

Breslow et al. discloses a technique for cross-linking various alkylene polymers, including polypropylene, which comprises heating the polymer in the presence of a poly (sulfonazide). Appellant has not challenged the examiner's characterization of the specific polypropylene mentioned in the patent as "stereoregular" and concedes that the poly (sulfonazides) disclosed in the patent include the specific compounds recited in the claims on appeal.

The Cooper, Hohenberg and Yokose patents describe the preparation of foams from various alkylene polymers (including polypropylene) carried out by heating the polymer in the presence of a particular blowing agent.

1. Serial No. 541,133, filed April 8, 1966, entitled "Process for Preparing Polypropylene Foam".

2. In the context of this invention the term "cellular" is synonymous with the terms "blown" and "foamed".

3. We are told by appellant that the term "cross-linked" describes the results of a treatment whereby chemical bonds are interposed between otherwise discrete polymer molecules thus forming a macromolecule from bundles of discrete polymer molecules and resulting in a strengthened, insolubilized polymer.

4. Appellant's brief similarly defines "stereoregular polypropylene" as: crystalline, linear olefin polymers comprising a regular succession of
$$(-CH_2-\overset{\displaystyle CH_3}{\overset{|}{CH}}-)$$
monomeric units where the steric position of $-CH_3$ groups on the polymer chain or backbone occur in a regular order or pattern as opposed to a random order or pattern.

The Ott patent is directed to a process for preparing a cross-linked cellular polyethylene by heating the polymer in the presence of a compound designated diphenyl–4,4′–di (sulfonylazide). This compound is said to not only cross-link the polymer but, because it decomposes, to also act as a blowing agent. The patent mentions that the ethylene polymer may contain up to 40% propylene copolymerized therein.

Pooley et al. similarly teaches the production of a cross-linked polyethylene foam. The technique disclosed in that patent involves heating the polymer in the presence of a blowing agent and a peroxide-type cross-linking agent.

## THE REJECTION

The examiner originally took the position that the claimed process was obvious under the statute in view of the Breslow et al. disclosure alone. He explained:

It is the examiner's position that it would be obvious to one skilled in the art to add a blowing agent to any polymeric composition to render it expandable and thereupon heating said composition to cure it. Nothing new or unobvious will accrue from adding a blowing agent to the composition of Breslow et al. It is well known to anyone skilled in the art that if one wished to foam a polymeric composition, he would choose a blowing agent which had a decomposition point above the softening point of the polymer because a blowing agent which had a decomposition temperature below the softening point of the polymer would not foam the polymer for the reason that the polymer would not be able to retain or absorb the gas given off by the blowing agent due to its rigidity.

Based on our combined observations, first, as laymen, of the increased commercial uses of foamed plastics, and second, as judges, of the number of different cases of this nature which we have been called upon to review in recent years, we might be inclined to accept the examiner's assertion that it would be obvious, at least prima facie obvious, to expand any polymeric composition. His reasoning is understandable to us and appears flawless. Appellant has not really raised much of a dispute on this point.

In any event, we have not been invited to rule on this particular question. The sole rejection before us, as it was articulated by the board, is based on the disclosure of Breslow et al. combined with that of all the other cited references. With regard to this rejection the board stated:

We think that it is obvious to a polymer chemist of average skill that a blowing agent can be added to the cross-linkable polypropylene composition of Breslow et al., in view of the use of such an agent in the cross-linkable polyethylene compositions of Ott and of Pooley et al. Appellant admits on page 2 of his specification that "Many attempts have been made to apply techniques used for the preparation of polyethylene foams to the preparation of polypropylene foams." Similar teachings are found in each of Cooper, Hohenberg et al. and Yokose et al.

## OPINION

The posture of the case before us appears to be this: the Patent Office is taking the position that the combined disclosures of the prior art references would suggest to one of ordinary skill in this art that cross-linked polypropylene foams may be prepared by adding a satisfactory blowing agent to the mixture of polypropylene and cross-linking agent and thereafter heating the combination. Appellant on the other hand places critical emphasis on the fact that, using his technique, extremely low density, uniform-celled foams are produced and argues that this result is *not* suggested in any of the references. He refers to two affidavits filed during the course of the prosecution of this case and argues that the showing contained therein, which is nothing more than a duplication of the processes described in the Hohenberg, Yokose and Cooper references and

a measurement of the foam densities produced thereby, proves that those references would not suggest that adding a blowing agent to the Breslow et al. cross-linkable mixture would result in the production of a cellular polymer having uniform closed cells and a density of 12 lbs./cu.ft. It is clear that the first issue we have to decide is the correctness of the case of obviousness as made out by the Patent Office from the references it cited.

There is no question that the specific combination of polymer and cross-linking agent to which appellant adds his appropriate blowing agent is old as disclosed by Breslow et al. We also find it quite reasonable to infer broadly from the combined teachings of the other cited references that it would have been within the level of ordinary skill in this art at the time appellant made his invention to add a blowing agent to any olefin polymer or, more particularly, to any combination of olefin polymer and suitable cross-linking agent if the resultant foam were desired. This is clearly enough to support the further inference that it would have been obvious to add the appropriate blowing agent to the combination of Breslow et al. In the circumstances we see, that inference is a strong one and certainly justified the initial conclusion that the claimed subject matter would have been obvious and is thus unpatentable under 35 USC 103.

No matter how strong, however, the case made out from the facts found by the Patent Office is only prima facie and must still be weighed against any factors to the contrary brought out by appellant in order to determine the ultimate validity of the conclusion of unpatentability. On this issue we find that appellant has failed to satisfy his burden of rebutting the prima facie case.

Appellants' affidavits must be taken as in the nature of rebuttal evidence. As such, to be effective, it is critical that they contain facts which support the antithesis of the inferences drawn by the Patent Office. Comparisons such as those presented herein are ordinarily relevant because they indicate that the claimed subject matter possesses some commercially desirable property or properties or a degree of improvement of such properties which would not have been expected from a consideration of the prior art. Admittedly, the affidavits here do show that foams produced by the techniques described in the three references do not possess the properties, asserted by appellant as critical. However, as pointed out by the Patent Office, this fact alone is not necessarily indicative that the claimed process would not have been obvious. The problem here is that we are dealing with a combination of references. The inference we have found proper from the combined teachings thereof is that it would have been obvious to foam a *cross-linkable* polypropylene. Appellant's affidavits contain nothing by which we can gauge whether the properties asserted as critical are anything other than what one of ordinary skill in the art would have expected. In short, we have no choice but to affirm the action of the Board of Appeals.

Affirmed.