Application of John R. LEWIS.
Patent Appeal No. 8555.

United States Court of Customs and Patent Appeals.
Jan. 6, 1972.

Marion C. Staves, Wilmington, Del., atty. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for Comm. of Patents; Fred E. Mc-Kelvey, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals erred in affirming the examiner's rejection under 35 U.S.C. § 103 of claims 1–3 in appellant's patent

application[1] for "Cellular Polypropylene."

The claimed invention relates to a cross-linked stereoregular polypropylene foam having a uniform cell structure with at least 70% of the cells being closed (not interconnected), and having a density of less than 10 lbs./cu.ft. The low density foam can be produced by heating a blend of stereoregular polypropylene, blowing agent and a poly(sulfonazide) cross-linking agent, a method held to be obvious to one of ordinary skill in the art in In re Lewis, 443 F.2d 389, 58 CCPA 1270 (1971).[2] A feature of that method is said to be the substantial cross-linking which occurs prior to expansion of the foam or simultaneously therewith, with the result that sufficient strength is imparted to the cells of the foam during formation that they will not rupture or collapse. According to the specification, the claimed foams have such advantages over the polypropylene foams of the prior art as improved cell structure, resistance to creep and solvents, and improved resistance to deformation at elevated temperatures.

The examiner and board relied on Hohenberg,[3] Breslow,[4] Yokose,[5] and Carr[6] as evidence of the prior art; all but the last having been discussed in this court's previous Lewis opinion. Briefly, Hohenberg and Yokose describe the preparation of foams from various olefin polymers, including polyethylene and polypropylene. Those foams, however, are not cross-linked and do not have the low density specified in the

claims.[7] Breslow describes the cross-linking (without foaming) of various alpha-alkyl polymers, such as polypropylene, by heating them in the presence of a poly(sulfonazide) of the type utilized by appellant. That method is said to obviate certain difficulties, such as chain scission or degradation, occurring when attempts were made to employ organic peroxides as cross-linking agents for those polymers.

Carr, the reference which has sparked most of the controversy between appellant and the board, describes various techniques utilized in abortive attempts to produce uniform cell-sized, *non-collapsed* foams from linear or cross-linked *polyethylene* starting materials. Discussing his solution to that problem, Carr states:

\* \* \* From the foregoing experiments it was felt that linear polyethylene was not suitable as a starting material to produce an acceptable expanded product, and that another starting material would be needed. Pursuant to that conclusion cross-linked polyethylene was employed as the starting material, but it did not work at all, because it was not possible to mix the polymer with the blowing agent to be used in the expansion treatment. After more investigation, it was eventually found that the starting material would have to be polyethylene substantially free of cross-linking for milling purposes *and that the polyethylene should be cross-linked*

1. Serial No. 541,101, filed April 8, 1966 as a continuation-in-part of serial No. 230,740 filed October 15, 1962.

2. We refer to the Lewis decision for additional details of the method, as well as for definitions of the terms "cross-linked" and "stereoregular polypropylene."

3. U. S. Patent No. 3,017,371 issued January 16, 1962.

4. U. S. Patent No. 3,058, 944 issued October 16, 1962, on an application filed March 15, 1961.

5. U. S. Patent No. 3,072,972 issued January 15, 1963.

6. U. S. Patent No. 3,098,831 issued July 23, 1963, on an application filed May 1, 1959.

7. Hohenberg, for example, states that the "expedient of foaming polyolefins is presently appreciated" and that the resultant foam cells "should be discrete or unicellular (not interconnected)" and "uniformly distributed" to insure optimum insulating and mechanical properties. According to appellant, the foams produced by Hohenberg have a density range of 12.5–56.2 lbs./cu. ft.

*with the blowing agent contained therein.* [Emphasis supplied.]

The resultant polyethylene foam, which is produced by heating a blend of polyethylene, blowing agent and peroxide cross-linking agent, has a uniform "closed cellular structure of fine pore size" with 88% or more of the cells closed, and a density of "preferably about 2 to 10 pounds per cubic foot." It also possesses improved dimensional stability at elevated temperatures and improved recovery from compression over conventional expanded polyethylene.

Said the board:

* * * Carr discloses a cross-linked polyethylene foam which corresponds, in physical properties, to the cross-linked polypropylene foam of the claims on appeal.

With Carr at hand, preparation of a cross-linked polypropylene foam having the same physical properties as Carr's polyethylene product would be obvious to one of ordinary skill in the art.

Appellant argues that the peroxide cross-linking agent disclosed in Carr will not produce a cross-linked polypropylene foam having the claimed physical properties and has made of record an affidavit to this effect executed by George B. Feild.

Breslow et al. state that organic peroxides are not readily effective for cross-linking alpha-alkyl polymers such as polypropylene and disclose the use of certain azides for cross-linking such polymers. Appellant also employs azide cross-linking agents.

The Feild affidavit merely confirms the teachings of Breslow et al. One of ordinary skill in the art of applying the Carr procedure to the preparation of foamed polypropylene would obviously use cross-linking agents known to be applicable to polypropylene rather than those known to be inapplicable thereto.

It cannot be gainsaid—appellant's arguments to the contrary notwithstanding—that polypropylene foam in general was obvious to one of ordinary skill in the art at the time appellant's invention was made. Yokose and Hohenberg clearly suggest polyethylene as well as polypropylene foams, albeit of higher density than those claimed.

From what has been said of the various references cited by the board, we think it is also reasonable to infer that one of ordinary skill in the art at the time appellant's invention was made had a mental appreciation of the desirability of a polypropylene foam possessing the properties recited in the claims. Carr made available to the art a low density polyethylene foam possessing a high percentage of closed and uniform-sized cells which he was able to produce by including a cross-linking agent in the polymer blend, thus solving a problem of high density, collapsed foams existing in that art. We think the worker of ordinary skill in the art—after considering Carr's cross-linking technique, other developments in the cross-linking of polypropylene evidenced by Breslow, and conceded similarities in this particular area of polyethylene and polypropylene technology[8]—would realize that a solution of a similar problem in the polypropylene foam art was now possible, and that a polypropylene foam of like physical characteristics and properties to the foam disclosed by Carr was within his grasp, not merely within his contemplation.

---

8. Appellant's specification acknowledges that:

Many attempts have been made to apply techniques used for a preparation of polyethylene foams to the preparation of polypropylene foams. For example, it has been suggested that peroxide cross-linking could be used in combination with blowing, but this does not yield, in the case of polypropylene, a closed cell foam. * * *

As the solicitor points out, it is not surprising that a closed cell foam did not result from the use of peroxide, in light of that material's lack of efficacy as a cross-linking agent for polypropylene described by Breslow.

Contrary to appellant's arguments, the board did not err in considering the obviousness of the method of producing the claimed foam as an aspect of the obviousness of the foam itself. While it is true, as appellant urges, that the existence of an obvious method of producing a given product does not necessarily negate patentability of the product so produced,[9] the method nevertheless is a factor to be considered, along with similarities and differences in structure and properties, in determining obviousness of the subject matter as a whole. In re Hoeksema, 399 F.2d 269, 55 CCPA 1493 (1968), and cases therein.

Turning to whether the art was aware of an operative process for implementing, or bringing to fruition, the claimed foam, this court has already held in *Lewis* that a process for preparing polypropylene foams of density less than 12 lbs./cu.ft. would have been obvious to one of ordinary skill. Here, too, we find no error in the board's determination, predicated on a somewhat different reference combination, that the same process used to prepare foams of a density less than 10 lbs./cu.ft. would likewise be obvious. We see no reason why one of ordinary skill would not expect the Carr process to produce a polypropylene foam of the recited density and closed cell structure, once that process is suitably modified to incorporate the knowledge imparted to the art by Breslow that poly(sulfonazides)—not peroxides—are operative cross-linking agents for polypropylene.

Finally, appellant contends that "one could not predict the properties of a hypothetical cross-linked polypropylene foam from a disclosure [Carr] describing certain properties of a cross-linked polyethylene foam," inasmuch as there are "differences between the polymers." While we appreciate that polyethylene and polypropylene are "different" polymeric materials, appellant has not explained how, or why, that difference in starting material would be expected to affect or change such properties as density and closed cell structure which are possessed by the foams actually produced by the Carr process, so long as that process is modified as necessary to include known operative cross-linking agents for the particular polymeric starting material employed.

We have considered appellant's remaining arguments, including those relating to the two Feild affidavits, but are not persuaded thereby of reversible error by the board.

Affirmed.

---

9. In In re Klug, 333 F.2d 905, 51 CCPA 1529 (1964), this court stated:

> Whether a product is patentable depends on whether it is known in the art or it is obvious and is not governed by whether the process by which it is made is patentable.

Similarly, in In re Naylor, 369 F.2d 765, 54 CCPA 902 (1966), this court stated:

> * * * Just as there may be obvious processes of producing new and nonobvious materials, * * * there may be unobvious methods of arriving at well known materials.