59 CCPA

**Application of William D. WILLIS.**

**Patent Appeal No. 8641.**

United States Court of Customs and Patent Appeals.

March 2, 1972.

Marion C. Staves, Wilmington, Del., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–8 of appellant's application entitled "Expanded Cross-Linked Polymers."[1] No claims have been allowed.

The invention relates to foamed, cross-linked epihalohydrin polymers having a uniform closed-cell structure, a density of from 8 to 80 lbs./cu.ft. (preferably 20–75 lbs./cu.ft.), and a percentage compressibility (determined with a one-pound weight on a square inch of sample) of 20–97%. The expanded polymers are disclosed as varying from spongelike to semirigid, and as retaining all of the desirable properties of the basic unexpanded poly(epihalohydrin)s from which they are prepared, including excellent swelling resistance to solvents and outstanding aging resistance.

Claim 1 is illustrative:

1. Expanded cross-linked poly(epihalohydrin) of substantially uniform closed-cell structure, having a density of from about 8 pounds per cubic foot to about 75 pounds per cubic foot and a percentage compressibility of from about 20% to about 97%, said poly-(epihalohydrin) having a weight average molecular weight of at least about 40,000.

Dependent claims 2–8 add limitations indicating whether the poly(epihalohydrin) is a homopolymer (claim 2) or a copolymer (claim 7), designating whether the homopolymer is amorphous (claim 3) or crystalline (claim 4), specifying the homopolymer as poly(epichlorohydrin) (claim 5) and the copolymer as being of epichlorohydrin and propylene oxide (claim 8). In addition, claim 6 limits the density to the preferred range of 20–75 lbs./cu.ft. Apparently, all the claims will stand or fall together.

The references relied upon by the board are:

| | | |
|---|---|---|
| Parry et al. (Parry) | 2,739,134 | March 20, 1956 |
| Aase et al. (Aase) | 2,831,820 | April 22, 1958 |
| Robinson (1) | 3,026,270 | March 20, 1962 |
| Robinson (2) | 3,026,305 | March 20, 1962 |
| Carey et al. (Carey) | 3,154,504 | October 27, 1964 |

Additional references relied on by appellant are:

| | | |
|---|---|---|
| Snyder | 2,623,033 | December 23, 1952 |
| Breslow et al. (Breslow) | 3,058,944 | October 16, 1962 |
| Feild et al. (Feild 1) | 3,211,677 | October 12, 1965 |
| Robinson (3) | 3,211,678 | October 12, 1965 |
| Feild et al. (Feild 2) | 3,298,975 | January 17, 1967 |

Robinson (1) and Robinson (3) disclose unexpanded, cross-linked epihalohydrin polymers which appellant readily admits are "essentially the same polymers as described in the instant application."

Carey discloses foamed epoxy resins having a uniform closed-cell structure, a density of from 3 to 27 lbs./cu.ft., and compressive strengths varying from 50 to 550 lbs./sq.in. Carey states that foams produced according to his invention "may be either substantially rigid or may be flexible" and have been "found to be compressible to one-half to one-third [their] * * * original volume."

Parry and Aase are also directed to cellular epoxy resins. The disclosed expanded polyepoxides are described in Parry as being hard products of high strength and in Aase as being tough, durable and resilient.

Of the references cited by appellant, Feild (1), Feild (2), and Robinson (3) relate to expanded polymers, while Snyder and Breslow disclose unexpanded polymers. Appellant cited these references to show that expanded polymer patents have issued even though patents to the same unexpanded polymer were in exist-

---

1. Serial No. 662,577 filed August 23, 1967 as a continuation-in-part of serial No. 550,622 filed May 17, 1966, which in turn is a continuation of serial No. 341,728 filed January 31, 1964 (now patent No. 3,287,287), which is in turn a continuation-in-part of serial No. 261,189 filed February 26, 1963.

ence. For example, Robinson (3) claims expanded copolyester resins, while the earlier patent to Snyder discloses unexpanded copolyesters.

The examiner rejected all of the claims under 35 USC 103 as unpatentable over Robinson (1) or (2) in view of Carey, Aase, or Parry, reasoning that it would have been obvious to one of ordinary skill in the art to foam the cross-linked epihalohydrin polymers of the Robinson patents in view of the secondary references which show expanded epoxy resins. The board affirmed this rejection. In response to appellant's objection to the combination of the references, the board stated that it regarded the polymers of the secondary references as "sufficiently analogous to the Robinson polymers to make the Examiner's combination of references proper."

The examiner and the board also reasoned that the secondary references illustrate that foamed polymers in general are well known, and that, since there is no evidence of difficulty in foaming the polymers of the primary references, it would have been obvious to foam those polymers. The board refused to consider the art cited by appellant in his attempt to rebut this line of reasoning.

In addition, the board, after reviewing the prosecution history in the instant application and its parent application, made the following observation:

> We have outlined the foregoing chronology of events because there appears to be no reason for appellant's separation of the presently appealed expanded cross-linked product claims from the claims of his Patent No. 3,-287,287 other than his desire to obtain a patent on the claims which had been allowed in Serial No. 341,728, without regard for the rejected expanded cross-linked product claims. If a terminal disclaimer were regarded as significant in overcoming a double patenting rejection, then the record of the present application is deficient because of the lack of such terminal disclaimer.

We mention these matters so that they will not be overlooked but, in view of our affirmance of the rejection which the Examiner has forwarded to us, we de not believe that any further action on our part is necessary.

Appellant contends that by taking this approach the board extracted a terminal disclaimer from him on threats of a double patenting rejection but without ever having made one, and that this was improper. Concerning the rejection (under 35 U.S.C. § 103) that was made, appellant submits that it is not sustainable for a number of reasons. Basically, it is appellant's position that the epihalohydrin polymers of the primary references and the epoxy resins of the secondary references have nothing in common and that the claimed foams are completely different from, and have desirable properties which one would not expect of, the foams of the secondary references. For these reasons, appellant believes that the claimed expanded epihalohydrin polymers would not have been obvious to one of ordinary skill in the art considering unexpanded epihalohydrin polymers in view of foamed epoxy resins or foamed polymers in general.

Appellant also contends that the Patent Office has confused his product claims with process claims, has improperly used an obvious to try test, and has acted contrary to normal patent practice in holding that it is obvious per se to add a blowing agent to any polymeric composition. In support of the latter contention, appellant cited the above-mentioned art to show a pattern of normal Patent Office practice in granting patents to foamed polymers in the face of prior art patents showing the unexpanded polymers.

 While we have held that an applicant has a right to have considered art which he makes of record,[2] we do not think much weight can be given to the references cited by appellant here. What the Patent Office has allowed in previous cases is not binding in subse-

2. *See, e. g.,* In re Thompson, 438 F.2d 613, 58 CCPA 966 (1971).

quent cases, especially when different factual situations are involved. In re Riddle, 438 F.2d 618, 58 CCPA 983 (1971). At best, the cited references may show that the level of skill in some polymer arts was such that claims directed to foamed polymers were found patentable over prior art knowledge of the unfoamed polymers, but they have little relevance to issues presented here since different polymers are involved and different factual situations are presented.

As we see it, there are two main issues here. The first is whether the claimed expanded polymers would have been obvious in view of the Robinson patents and the general prior art knowledge of foaming polymers by adding a blowing agent (i.e., would it be obvious per se to foam any known polymer?). We consider this first since if answered in the affirmative, we need not look into the similarity or dissimilarity between the epoxy resins of the secondary references and the epihalohydrin polymers of the primary references because whatever the secondary references show, they at least illustrate the fact that polymers in foam form are well known in the art. Secondly, the issue may be framed in terms of whether the claimed expanded polymers would have been obvious to one of ordinary skill in the art in view of the Robinson patents showing unexpanded epihalohydrin polymers, and the secondary references showing foamed epoxy resins. In that context, a comparison of epoxy resins and epihalohydrin polymers is necessary in order to decide if one skilled in the art would be led by the knowledge of foamed epoxy resins to prepare the claimed expanded epihalohydrin polymers.

We recently addressed ourselves to the first issue in In re Lewis, 443 F.2d 389, 58 CCPA 1270 (1971), where we said:

Based on our combined observations, first, as laymen, of the increased commercial uses of foamed plastics,

and second, as judges, of the number of different cases of this nature which we have been called upon to review in recent years, we might be inclined to accept the examiner's assertion that it would be obvious, at least prima facie obvious, to expand any polymeric composition. His reasoning is understandable to us and appears flawless. Appellant has not really raised much of a dispute on this point.

In Lewis, we went on to find that the claimed process of foaming a known cross-linked polypropylene polymer would have been obvious in view of prior art teachings of foaming cross-linked polyethylene polymers,[3] and thus we found no need to comment further on the general proposition quoted above.

■■ We still might be inclined to find a claim directed broadly to a foam of a known polymer prima facie obvious in view of foaming art in general since apparently any polymeric composition will expand to some extent upon adding a blowing agent. However, that is not the situation here because the claims call for a specific expanded polymer having a defined cell structure, density, and percentage compressibility. When such claims are involved, we think it cannot simply be said as a general proposition that it would have been obvious to add a blowing agent to the known unexpanded polymers and achieve the claimed expanded polymers. Rather, we think that, in order to support a rejection of such claims, there must be some indication that those skilled in the art would have found it obvious not only to foam the particular polymers in question but also that he would have expected and known how to get expanded products with the claimed properties and characteristics.

This leads us to the second issue since the Patent Office did rely on three secondary references to show that polymers similar to poly(epihalohydrin)s had previously been foamed and to show that

---

3. In a follow-up of that case, we affirmed the rejection of the product claims over essentially the same art. In re Lewis, 452 F.2d 1057, 59 CCPA (1972).

the claimed foam characteristics were, or could have been, attained. The key to this issue is whether the resins of the secondary references are in fact sufficiently similar to the epihalohydrin polymers of the primary references to lead one of ordinary skill in the art to make the suggested combination of prior art teachings. We think this is where the rejection fails.

While polyepoxides, like poly(epichlorohydrin), are derived in part from epichlorohydrin, that is where the similarity ends. Epoxy resins usually are condensation reaction products of epichlorohydrin and a bisphenol, whereas epihalohydrin polymers are formed by addition polymerization. Polyepoxides are generally liquid or semisolid having a relatively low molecular weight, while poly(epihalohydrin)s are rubbery solids and have a relatively high molecular weight. There are other differences which we could detail; however, we do not think that necessary here. Suffice it to say that we do not think one of ordinary skill in the art having knowledge of foamed epoxy resins would have found it obvious to expand the epihalohydrin polymers of Robinson. Epoxy resins and epihalohydrin polymers simply are not close enough in their properties to indicate to one of ordinary skill in the art what types of foams would be achieved by expanding epihalohydrin polymers. Therefore, the person skilled in the art would not be led by the cited art dealing with epoxy foams to prepare the claimed expanded poly(epihalohydrin)s.

Finally, we come to appellant's complaint that the board acted improperly in hinting that double patenting may exist without having actually set forth such a rejection. We do not see where we can or should do anything in that regard. It seems to us that such matters must be resolved before the Patent Office or relief sought by other forms of judicial process. See, e.g., Palisades Pageants, Inc. v. Miss America Pageant, 442 F.2d 1385, 58 CCPA 1225 (1971). There having been no double patenting rejection and no actual "decision" in regard to one, we have nothing to review. We do not review nonexistent decisions of the board. In re Borg, 392 F.2d 642, 55 CCPA 1021 (1968); Dunlap & Co. v. Bettmann-Dunlap Co., 57 App.D.C. 351, 23 F.2d 772 (1927).

For the foregoing reasons, the rejection of claims 1–8 under 35 U.S.C. § 103 as unpatentable over Robinson (1) or (2) in view of Carey, Aase, or Parry cannot be sustained. Therefore, the decision of the board is reversed.

Reversed.