60 CCPA

**Application of Charles L. MILLS and David A. Palmer.**

**Patent Appeal No. 8796.**

United States Court of Customs and Patent Appeals.

Dec. 29, 1972.

Marion C. Staves, Wilmington, Del., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey, Washington, D. C., Robert D. Edmonds, Oakton, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Board of Appeals sustaining the examiner's rejection of claims 1–4 of ap-

pellants' application [1] entitled "Polypropylene-Elastomer Foams" as unpatentable under 35 U.S.C. § 103. As the board explained in a decision on reconsideration, while the examiner relied upon four patents in support of his rejection, two of them, Cooper [2] and Breslow et al.[3] (Breslow), provided sufficient basis for a finding of obviousness. We agree that the claimed subject matter would have been obvious from Cooper and Breslow, and we accordingly affirm the board's decision.

Appellants claim a cross-linked [4] foam composed of a blend of stereoregular polypropylene [5] and a hydrocarbon elastomer in defined proportions. The foam is claimed to have a uniform cell structure with at least 50% of the cells closed and a low density of less than 10 pounds per cubic foot. The specification discloses that sulfur and peroxide curing agents are unsuitable since they cause the polypropylene to degrade. For effective cross-linking, an azide, such as a poly (sulfonazide), is used. A conventional blowing agent is employed to achieve foaming.

Claim 1 is representative of the claims on appeal and reads as follows:

A flexible, dimensionally stable cellular material comprising a cross-linked and foamed blend of steroregular polypropylene with from about 5 to 50% of a hydrocarbon elastomer, said cellular material being characterized by a uniform cell structure with at least 50% of the cells closed, a density of less than 10 lbs./cu. ft., resistance to heat distortion and the ability to absorb impact energy.

Claims 2, 3 and 4 define specific hydrocarbon elastomers. Those limitations are not relied upon by appellants for patentability.

### The References

Cooper discloses the foaming and cross-linking of blends of a crystalline 1-olefin polymer, preferably a homopolymer, such as polypropylene, and a natural or synthetic elastomer. Whereas appellants claim a 50–95% polypropylene/5–50% elastomer blend, Cooper discloses a 0.5–40% polypropylene/60–99.5% elastomer blend.

Cooper teaches that the foams may be made by use of conventional "vulcanizing," or cross-linking, agents, such as sulfur, and chemical blowing agents. The elastomer and polymer are blended "at a temperature above the softening point of the 1-olefin polymer." The compounding agents are preferably added after the blend has been allowed to cool.

Cooper's preferred 1-olefin polymer is polyethylene, although "polymers of 1-olefins in general having the desired degree of crystallinity are applicable * * *." The Cooper invention is illustrated by test examples employing (I) synthetic elastomer-polyethylene blends and (II) natural rubber-polyethylene blends. The example I composition included, among other compounding ingredients, 50 parts of plasticizer, which was added to facilitate working of the blend, and sulfur. The example II composition differed in various respects including the use of only 20 parts of plasticizer. However, sulfur was again used to effect cross-linking.

1. Serial No. 710,755 filed March 6, 1968, as a continuation-in-part application of Serial No. 541,138 filed April 8, 1966, which was, in turn, a continuation-in-part application of Serial No. 230,692 filed October 15, 1962.

2. U.S. Patent No. 2,927,904 issued March 8, 1960.

3. U.S. Patent No. 3,058,944 issued October 16, 1962, on an application filed March 15, 1961.

4. "Cross-linking" refers to the formation of bonds between otherwise discrete polymer molecules. That results in polymer macromolecules which are stronger and relatively insoluble as compared to the uncross-linked molecules. The terms "curing" and "vulcanizing" are used synonymously with "cross-linking" herein.

5. "Stereoregular" polypropylene is a crystalline, linear polypropylene having an ordered, as opposed to random, pattern of monomeric units.

Breslow teaches that conventional curing agents, such as sulfur, have a degradative effect on alpha-alkyl polymers, including polypropylene, and that this may be avoided by using a poly (sulfonazide) as the cross-linking agent.

### The Board's Position

Although appellants complain that the ground or grounds of rejection have not been fairly set forth by the Patent Office, we think the criticism unwarranted. The board's position emerges clearly from its original decision and its decision on reconsideration.

As expressed in the original decision, the board was of the view that the claimed subject matter is obvious, in the sense of 35 U.S.C. § 103, from Cooper, at least in the absence of a showing of:

[A]ny difference in properties between a cellular material comprising a cross-linked and foamed blend of 40% stereoregular polypropylene and 60% hydrocarbon elastomer (Cooper) and a cellular material comprising a cross-linked and foamed blend of 50% stereoregular polypropylene and 50% hydrocarbon elastomer (included by claim 1).

Appellants had argued that Cooper never contemplated the use of polypropylene and that polypropylene blend foams could not be made according to the Cooper procedure. An affidavit of Palmer purporting to prove the latter and, by inference, substantiate the former, had been submitted. The board did not consider the tests reported therein persuasive for reasons explained below.

In the original opinion, the board indicated that Breslow would suggest the use of an azide cross-linking agent when polypropylene blend foams were being prepared in accordance with the Cooper disclosure.

Appellants petitioned for reconsideration, including with their petition an affidavit of Feild which reported further tests. The board rendered a second decision adhering substantially to the position taken previously. The Feild affidavit was not considered persuasive because it failed to take into account the Breslow teachings, and the board stated that the rejection was based on "Cooper taken with prior knowledge illustrated in Breslow et al."

From a formal standpoint, the § 103 rejection before us is clearly based on Cooper in view of Breslow. It is apparent that Cooper is principally relied upon and that Breslow is relevant only in connection with the method of making the composition which appellants allege not to be obvious from Cooper.

### OPINION

We are in agreement with the board's conclusions. Cooper appears to suggest the claimed foam products. Propylene is expressly listed as a suitable polymerizable 1-olefin, and a homopolymer of the selected 1-olefin is the preferred polymeric form of the blend component. Appellants advance no contention that Cooper would not suggest *stereoregular* polypropylene. There can be no doubt, therefore, that the use of stereoregular polypropylene in admixture with an elastomer to form a cross-linked foam is disclosed by Cooper.

We find no merit in appellants' contention that the disclosure of propylene is so submerged in Cooper, and the teaching of the use of ethylene so predominant, that Cooper cannot be said to place foams composed of the claimed ingredients in the possession of the public. All the disclosures in a reference must be evaluated, including non-preferred embodiments, In re Boe, 355 F.2d 961, 965, 53 CCPA 1079, 1083, (1966), and a reference is not limited to the disclosure of specific working examples. In re Chapman, 357 F.2d 418, 424, 53 CCPA 978, 985 (1966). Thus, Cooper's examples directed to polyethylene blend foams do not confine the disclosure to the use of polyethylene, and the Cooper patent as a whole does not point away from the use of polypropylene. Compare In re Langer, Cust.Ct. & Pat. App., 465 F.2d 896, 899, (1972). On the contrary, Cooper explicitly teaches its use.

We also think the claimed proportions of blend components would be at least prima facie obvious from Cooper. Both the claims on appeal and the Cooper disclosure recite a broad range of suitable polypropylene concentrations. We think it fair to assume that one of ordinary skill in the art would not find the difference between a 50–50 blend and 60–40 blend significant, and we agree with the solicitor that the claimed properties are those which would generally be expected. Compare In re Lewis, Cust.Ct. & Pat. App., 452 F.2d 1057, (1972); In re Lewis, 443 F.2d 389, 58 CCPA 1270 (1971).

The Feild affidavit was filed for the purpose of proving the contrary, or, according to appellants' brief, to show "the differences between the product of the Cooper patent and the product of Claim 1." Three tests were run allegedly using the Cooper procedure with conditions adjusted for a polypropylene blend foam. The three compositions were based on 50% natural rubber/50% polypropylene, 60% natural rubber/40% polypropylene, and 80% natural rubber/20% polypropylene respectively. In each case, the resultant foam had a much higher density than that claimed.

The board drew attention to the fact that a sulfur curing agent was used. We agree that one of ordinary skill in the art making a polypropylene blend foam according to the Cooper procedure would use an azide cross-linking agent rather than sulfur in view of the Breslow teaching. In its failure to make this obvious adjustment, the Feild affidavit provides little basis for a meaningful comparison of product properties. We find it to lack probative value for the purpose for which it was offered.

We also agree with the board that the Palmer affidavit lacks persuasion. In their brief, appellants state that this affidavit shows "that following the disclosure of the Cooper reference, one cannot prepare a foamed, cross-linked blend of stereoregular polypropylene and a hydrocarbon elastomer * * *." Affiant reported unsuccessful efforts to make such foams in three tests. However, the board, in its original decision, observed that the tests were based on example II of the Cooper patent without making obvious adjustments for the difference between a polypropylene composition and the polyethylene composition of the example.

In tests I and II, the attempt was with a 50% polypropylene/50% natural rubber mix. Various additives, including 20 parts of plasticizer per 100 parts of mix, as per Cooper example II, were used. In each case, the blend so produced could not be cold worked. This resulted in the need to add the curing agent, which was sulfur, and the blowing agent to the blend while it was hot. Cross-linking occurred prematurely, and no foaming was achieved. The board noted that a higher quantity of plasticizer was used by Cooper in example I and concluded that different blend components require different concentrations of plasticizer to make the blend cold-millable.

The board properly rejected tests I and II. One of ordinary skill in the art would have known how to make a blend which could be shaped in the cold. The failure of affiant to make the obvious adjustment in plasticizer content renders the tests valueless as a representation of the capacity of those skilled in the art to make polypropylene blends given the Cooper disclosure.

In test III of the Palmer affidavit, an 80% natural rubber/20% polypropylene mix was blended with the additives set forth in Cooper's example II. A temperature below the softening point of polypropylene was used, and the blend apparently turned out to be a solid dispersion of particulate polypropylene in rubber. The board considered this test to be without probative value in view of Cooper's disclosure that the temperature must be above the softening point of the polymer used. We agree. Test III of the affidavit did not represent the approach one of ordinary skill in the art would take following the Cooper disclosure.

As noted above, the Feild affidavit was filed after the board rendered its original decision which contained the criticisms of the Palmer affidavit. The Feild tests utilized a higher proportion of plasticizer than was used in the Palmer tests and a temperature above the softening point of polypropylene. In each case a cold-millable blend was achieved and foaming was effected. Feild's success in preparing a polypropylene blend foam by making obvious adjustments in the Cooper procedure substantially rebuts the contention sought to be proved by the Palmer affidavit. We are satisfied that appellants have failed to prove that one of ordinary skill in the art would be unable to make polypropylene blend foams given the Cooper disclosure. Compare In re Hoeksema, 399 F.2d 269, 55 CCPA 1493 (1968).

The decision of the board sustaining the rejection of the appealed claims is affirmed.

Affirmed.