59 CCPA

**Application of Arthur W. LANGER, Jr. and Raymond R. Haynes.**

**Patent Appeal No. 8731.**

United States Court of Customs and Patent Appeals.

Sept. 14, 1972.

David A. Roth, Houston, Tex., atty. of record, for appellant. M. F. Fincke, S. W. Brock, Jr., John S. Schneider and Thomas B. McCulloch, Houston, Tex., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patent. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and CLARK, Justice, United States Supreme Court, sitting by designation.

LANE, Judge.

This is an appeal from that portion of the decision of the Board of Appeals sustaining the examiner in rejecting process claims 11 and 14–17 [1] of appellants' application [2] as unpatentable under 35 U.S.C. § 103 for obviousness over a patent to Jezl et al. (Jezl).[3] Our review of the record and arguments in this case convinces us that the board erred, and we accordingly reverse.

The claimed invention is a process of copolymerizing an alpha-olefin and a sterically hindered alkenyl amine in the presence of a Ziegler-type catalyst. In the specification, appellants explain that prior to their invention the polymerization of alpha-olefins, such as ethylene and propylene, to form, for example,

---

1. On appeal to the board, the application included product claims in addition to these process claims, and the board affirmed the examiner's rejection of the product claims as well. However, appellants have expressly withdrawn the product claims from this appeal.

2. Serial No. 467,109 filed June 25, 1965.

3. U. S. Patent No. 3,293,326 issued December 20, 1966, on an application filed July 6, 1965, as a continuation-in-part application of one filed June 17, 1960.

polyethylene and polypropylene, was well known, as was the copolymerization of monomers, such as ethylene and propylene, to form polyethylene-polypropylene copolymers. Both types of polymerization were known to be performed in the presence of a Ziegler-type, or organo-metal-transition metal, catalyst. It appears that it was also known that the introduction of amine sites into a poly(alpha-olefin) would lend dyeability to the polymer since such sites are receptive to available dye compounds. Appellants therefore sought an alpha-olefin-amine copolymer. A problem in realizing this objective is said to have been that Ziegler-type catalysts are deactivated by polar compounds, such as amines, with which they react. Appellants' solution to the problem was the selection of alkenyl amines which are sterically hindered at the amine site, i.e., which have a structure and spatial arrangement of the component atoms such that reaction is retarded or inhibited.

Claim 11 is the broadest claim on appeal and reads as follows:

11. A copolymerization process which comprises contacting under polymerization conditions in the presence of an organo-metal-transition metal catalyst and [sic] alpha-olefin containing 2 to 10 carbon atoms and an alkenyl amine having one of the following formulae:

[A6401]

where: $R_1$ is an alkenyl radical containing 4 to 12 carbon atoms;

$R_2$ and $R_3$ are selected from the group consisting of hydrogen and an alkyl group containing 1 to 8 carbon atoms, with the sum of carbon atoms of $R_2$ and $R_3$ being less than 13;

$R_4$ is an alkyl group containing 1 to 4 carbon atoms;

$R_5$ is selected from the group consisting of hydrogen and an alkyl group containing 1 to 4 carbon atoms;

$R_6$ is an alkenyl radical containing 2 to 12 carbon atoms; and

of the groups $R_1$, $R_2$ and $R_3$, at least two of the groups have a carbon branch at the alpha or beta positions from the nitrogen atom; and $R_5$ may be hydrogen provided the group $R_1$ has a carbon branch at the alpha or beta position from the nitrogen atom.

Dependent claims 14–17 recite specific process conditions, materials, and proportions of materials. The limitations on the process imposed in these claims are not relevant to the issues on appeal.

The sole reference relied upon is the Jezl patent. Like appellants, Jezl was concerned with imparting dyeability to poly(alpha-olefins) and discloses accomplishing this by copolymerizing alpha-olefins with alkenyl amines in the presence of a Ziegler-type catalyst. Jezl dis-

closes using terminally unsaturated alkenyl amines and recites a long list of suitable amines. We need not review the many amines disclosed by Jezl for the Board and the solicitor relied on only one, N, N–di–2–ethylhexyl–4–pentenylamine. This is concededly a sterically hindered amine of the type contemplated by appellants, although it does not fall within the scope of the definition of suitable amines recited in the appealed claims. Appellants assert that the named amine is the only amine disclosed by Jezl which is structurally similar to those found by appellants to be suitable for use with Ziegler-type catalysts, all the other Jezl amines being unhindered. Nothing said by the board in either its original opinion or its opinion pursuant to appellants' request for reconsideration, and nothing argued by the solicitor, is inconsistent with that assertion. The solicitor's case is built entirely on the named amine. We therefore approach this case from the premise that Jezl names one sterically hindered amine for use in the same process as appellants and many other amines, all of which are *unhindered*.

The board held as follows:

Jezl discloses the use of, *inter alia*, a[n] N, N–di–2 ethylhexyl–4–pentenyl amine which falls outside the artificial formula of * * * [claim] 11 by having 2 alkyl radicals with a total of 16 carbon atoms instead of the upper limit of 13 set forth in the formula. This illustrative compound is described as producing copolymers with alpha olefins and there is nothing to suggest that it does not do this as effectively as do the homologous unsaturated amines of appellants' claim 5 [which defined the amine as N, N–di–isopropyl–3–butenylamine and which was in the group of product claims withdrawn from appeal].

Indeed, it might be expected that the illustrative amine serves more effectively its process and product purpose than many of the amines called

for in appellants' claims * * * 11, and 14 to 17 because it is a polymeriz-Jezl et al. specify that their amine able *terminally* unsaturated amine. monomer must be terminally unsaturated and appellants specifically identify no useful amine having anything other than terminal unsaturation in its alkenyl group.

Appellants' principal argument with respect to Jezl et al. appears to be that the patent does not show the same "structure" as that claimed, by which we assume that appellants refer to their limitation on the total number of alkyl carbon atoms in the amine. This number is not shown to be "critical," or to distinguish the effective, from the ineffective compounds.

The solicitor asserts that this case should be resolved on the basis of homology of the named amine in Jezl and appellants' amines which compels, in his view, a holding of prima facie obviousness which stands unrebutted.

Appellants urge that Jezl shows no appreciation for the problem solved by them and that as a result, there is no basis for selecting the one amine relied upon and finding the use of sterically hindered amines to have been obvious to one of ordinary skill in the art.

## OPINION

We find ourselves in agreement with appellants' position in this case. As elementary as it may be to patent law under the 1952 Act, the concept of having to show obviousness of the invention "as a whole," as required by 35 U.S.C. § 103, is especially appropriate to bear in mind in this appeal. See In re Aufhauser, 399 F.2d 275, 55 CCPA 1477 (1968); In re Hoeksema, 399 F.2d 269, 55 CCPA 1493 (1968). That concept supersedes "rules" which might emerge from the repeated application of other principles which may ordinarily be correct but fail under a set of facts which bring such principles in conflict with the broader notions of § 103.

So it is that while this court has found the prior art disclosure of homologues of compounds to render prima facie obvious claims to those compounds, see, e.g., In re Ackermann, 444 F.2d 1172, 58 CCPA 1405 (1971); In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963), homology should not be automatically equated with prima facie obviousness. The facts of the present case strain to the breaking point such an equation.

We view appellants' invention "as a whole" as being the use of sterically hindered amines as opposed to unhindered amines in a known process to solve a particular problem. We find no challenge to appellants' contentions that the problem of catalyst deactivation exists and the use of sterically hindered amines as a class solves it. We do not think the Jezl patent provides a basis for the use of sterically hindered amines as a class, or of any of the amines encompassed by appellants' claims, in the Jezl process. The presence in the reference of an isolated hindered amine falling outside the scope of appellants' claims does not, by itself, apprise the ordinary artisan of the significance of hindered amines as a class. Compare In re Kuderna, 426 F.2d 385, 389, 57 CCPA 1078, 1083–1084 (1970).

This court has said that "[a]ll of the disclosures in a reference must be evaluated for what they fairly teach one of ordinary skill in the art." In re Boe, 355 F.2d 961, 965, 53 CCPA 1079, 1083 (1966). Under the facts in *Boe*, that concept brought non-preferred embodiments within the purview of prior art subject matter against which the claimed subject matter could be compared. However, the concept cuts both ways, and when "all of the disclosures in a reference" are considered, the overall suggestion to emerge from the prior art reference may be contrary to that which might appear from an isolated portion of the reference. Compare In re Sebek, Cust. & Pat.App., 465 F.2d 904, decided August 31, 1972. In effect, we compare the prior art "as a whole" with the claimed subject matter "as a whole." Doing so in the present case convinces us of the error in the board's decision, and we accordingly reverse.

Reversed.