**Application of Richard EPPLE and Reinhold Kaiser.**
**Patent Appeal No. 8895.**

United States Court of Customs and Patent Appeals.

May 17, 1973.

Harvey Kaye, George H. Spencer, and Daniel Sullivan, Jr., Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This is an appeal from the decision of the Board of Appeals holding claims 1–7 of appellants' application, serial No. 614,117, filed February 6; 1967, entitled "Low Capacitance Semiconductor Mount-

*ed* drill collars classifiable as *finished* parts for boring machinery." [Emphasis supplied.]

ing" to be unpatentable under 35 U.S.C. § 103 in view of certain prior art. We reverse.

## THE INVENTION

The claims are drawn to a semiconductor device, such as a transistor, diode, or solid-state circuit, which contains grooves in the semiconductor body filled with insulator material to separate the semiconductor body from passive elements, such as resistors and conductor paths, located on the surface of the semiconductor device. The presence of an insulating barrier reduces the capacitance which develops between the passive elements and the semiconductor body. The claimed device is said to avoid the disadvantages of prior semiconductor devices in which passive elements were screened from the semiconductor body by layers of insulation placed on the surface of the body.

Figures 1 and 2 of the application illustrate the semiconductor devices here involved.

Fig.1

Fig.2

The specification describes the transistor depicted in the drawings as consisting of a "semiconductor body 1 which has the conductivity type of the collector region, and into which the base region 2 and the emitter region 3 are introduced * * *." Conventional insulating layer 4 is provided. Contact to the base and emitter regions is made by conducting paths 5 and 6, the larger areas of which are 11 and 12, respectively, seen clearly in the perspective plan of fig. 1. The semiconductor material is separated from areas 11 and 12 by grooves 7 and 8 filled with insulating material as shown at 9 and 10. The filled grooves are flush with the surface of insulating layer 4.

Claim 1 is representative of the appealed claims and reads as follows:

1. A semiconductor device comprising a semiconductor body and passive elements arranged on the surface of the semiconductor body, wherein at least portions of the said passive elements are separated from the semiconductor body by insulating material arranged in grooves in the semiconductor body.

Claims 2–4 and 7 also refer to "insulating material" while claims 5 and 6 define said material as silicon dioxide and silicon nitride.

## THE PRIOR ART AND THE REJECTION

The board listed the prior art as follows:

References relied upon by the Examiner:

| Pomerantz | 3,271,201 | Sept. 6, 1966 |
| Heiman | 3,283,221 | Nov. 1, 1966 |
| Youmans | 3,381,255 | April 30, 1968 |
| | | [application filed April 12, 1965] |

References added by the Board of Appeals:

| Welker | 2,798,989 | July 9, 1957 |
| Folberth | 2,858,275 | Oct. 28, 1958 |

An introduction to Semiconductor Electronics by R. P. Nanavati, published 1963 McGraw-Hill Book Company, New York, New York pp. 39–40, 52–55.

Pomerantz, the principal reference, discloses semiconductor devices designed to overcome the same problem faced by appellants—capacitance buildup between passive elements on the semiconductor surface and the semiconductor material. One solution taught by Pomerantz is explained as follows:

In general, the present invention consists in the provision of an auxiliary layer, preferably diffused, about the base of a planar transistor or about one of the elements of a diode. The layer may be made of intrinsic material, which is, of course, of very high resistivity.

Figure 1 illustrates the Pomerantz structure:

## FIG. I

The device has die 12, base 14, emitter 16, conventional insulating layer 18, and conducting paths 22 and 24 separated from the die 12 by regions 20. As an alternative to intrinsic material "i," the regions 20 can be of the P-type base material. It is the use of the intrinsic material that is of relevance to the subject matter of the appealed claims because Pomerantz states the following:

In the situation where the layer 20 is of intrinsic material, it is obvious that the thickness of dielectric material between [sic: beneath?] the metallized layer 22 or 24 is extended. The resistivity of the intrinsic material is so high that it is to all intents and purposes an insulator serving as dielectric material in addition to the masking layer between the N-type material of the die and the metal of the layers 22 and 24 which contact the emitter and base, respectively.

Pomerantz teaches that "to form a layer 20 of intrinsic material, it is necessary to diffuse an intrinsifying agent such as gold into the die [12] * * *."

Youmans discloses, inter alia, the suitability of silicon dioxide as an insulator. Heiman discloses a field-effect transistor which includes "a high resistivity base * * * [which] may be * * * of any semiconductor or it may be an insulator material." Heiman was relied upon as demonstrating equivalence between insulating material and semiconductor material for use as high resistivity material in semiconductor devices.

With reference to the Nanavati article, the board noted that "the term insulator is not an absolute term but is relative in nature," and that an insulator under normal conditions can become a conductor under extreme conditions.

Appellants treat the intrinsified semiconducting material of Pomerantz as semiconducting material of high resistivity. The Patent Office does not appear to challenge appellants' assertion that the intrinsic material is semiconducting. However, the solicitor does argue that the intrinsic semiconducting material disclosed by Pomerantz is within the ambit of the phrase "insulating material" as used in claims 1–4 and 7. The solicitor alternatively contends that the board's decision may be sustained on the ground that the substitution of insulating material, including the silicon compounds of claims 5 and 6, for the Pomerantz intrinsic material would have been obvious to one of ordinary skill in the art.

## OPINION

Although the board has attempted to establish that the terms "insulator" and "semiconductor" are of such a relative nature that one blends into the other, the record convinces us that those of ordinary skill in the art recognize a distinction between insulating and semiconducting. The Nanavati reference treats insulating, semiconducting and conducting as effects of distinguishable identification. The board may be correct in viewing the terms as "relative," but on the record before us, we conclude that insulating material would not mean high resistivity semiconducting, i. e. intrinsic, material to one of ordinary skill in the art. We accordingly do not agree that the phrase "insulating material" as used by appellants in claims 1–4 and 7 encompasses the Pomerantz intrinsic material.

The asserted obviousness of substituting insulating material for the intrinsic material used by Pomerantz is predicated primarily on the Pomerantz disclosure that the intrinsic material has such a high resistivity that it is "to all intents and purposes" an insulator which shields passive elements from the semiconductor material thereby reducing undesired capacitance, and on the Heiman disclosure that in certain types of transistors both semiconducting and insulating material will serve the function of high resistivity material.

Appellants concede that Pomerantz provides a solution to the same problem, but urge that the removal of semiconductor material and its replacement with

insulating material is a procedure too remote from the intrinsification technique of Pomerantz to have been appreciated by one of ordinary skill in the art. The Heiman disclosure is not regarded by appellants as a teaching of general equivalence between semiconducting and insulating materials, but merely an indication of alternatives suitable for use in constructing the Heiman transistors.

We are in agreement with the position advanced by appellants in this case. We too think that one possessed of ordinary skill in the art would not have envisioned the claimed structure from Pomerantz and Heiman especially in light of the technique of manufacture disclosed by Pomerantz which differs completely from the method of making the claimed device. The solicitor urges that the method of manufacture is irrelevant to the patentability of claims drawn to articles. However, we are of the view that the determination of obviousness or nonobviousness of the claimed subject matter *as a whole* from the Pomerantz disclosure *as a whole*, along with the other prior art relied upon, includes weighing the respective method considerations since they would contribute to the perception of the prior art disclosures, especially that of Pomerantz, that one of ordinary skill in the art would acquire. Cf. In re Langer, 465 F.2d 896, 899, 59 CCPA ——, —— (1972).

We agree with appellants that the claimed structure, in which semiconducting material is *replaced*, should properly be viewed as a substantial departure from the Pomerantz construction in which portions of semiconducting material are intrinsified to effect greater resistivity. So viewed, the claimed subject matter would not have been obvious to one of ordinary skill in the art from the references relied upon.

The decision of the Board of Appeals is reversed.

Reversed.