**Application of Eugene A. SNOW and Arnolds Steinhards.**

**Patent No. 8785.**

United States Court of Customs and Patent Appeals.

Jan. 26, 1973.

Rehearing Denied April 5, 1973.

* Application serial No. 266,949, filed March 16, 1967.

Carl A. Randles, Jr., Kalamazoo, Mich., attorney of record, for appellants. John Kekich, Kalamazoo, Mich., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 1–16 in appellants' application serial No. 577,820, filed September 8, 1966, as unpatentable under 35 U.S.C. § 103 in view of the prior art. We affirm.

### THE INVENTION

The invention relates to a herbicidal composition comprising a N,N-disubstituted-α,α-diphenylacetamide (hereinafter Diphenamid) and 4,6-dinitro-o-*sec*.butylphenol (hereinafter DNBP) dissolved in a chlorinated hydrocarbon solvent, and a method of using that composition to control weeds. As background, the specification acknowledges that:

Both N,N-disubstituted-α,α-diphenylacetamide and 4,6-dinitro-o-*sec*.butylphenol are known herbicides. The former herbicide is known to be effective for pre-emergence control of a wide variety of broadleaved weeds and weed grasses as described in U. S. Patent No. 3,120,434 and U. S. Patent No. 3,043,676. The latter herbicide is well-known and effective against annual broadleaved weeds and weed grasses. A combination of N,N-dimethyl-α,α-diphenylacetamide and 4,6-dinitro-o-*sec*.butylphenol for controlling weeds in peanuts was noted in North Carolina Pesticide Manual, p. 43 (1966).

The novelty in appellants' composition resides in the use of a particular chlorinated hydrocarbon—e. g. chloroform, methylene chloride, or others possessing 1–3 carbon atoms—as a solvent carrier for the two herbicides to form an emulsifiable concentrate which can be dispersed in water, if desired, for application to weeds. Claim 1 is representative:

1. Composition comprising N,N-disubstituted-α,α-diphenylacetamide of the formula:

$$\text{(C}_6\text{H}_5)_2\text{CH}-\overset{\displaystyle O}{\overset{\|}{\text{C}}}-\text{N}\overset{\displaystyle R_1}{\underset{\displaystyle R_2}{\diagdown}}$$

[A8025]

wherein $R_1$ and $R_2$ are alkyl of from 1 to 3 carbon atoms, inclusive, or alken-

yl of from 3 to 4 carbon atoms, inclusive, and 4,6-dinitro-o-*sec*.butylphenol dissolved in a chlorinated hydrocarbon solvent of from 1 to 3 carbon atoms inclusive, both essential active ingredients in concentrations adequate for herbicidal application.

### THE PRIOR ART

The references are:

| | | |
|---|---|---|
| Pohland | 3,120,434 | Feb. 4, 1964 |
| Lemin et al. | 3,152,881 | Oct. 13, 1964 |

Worsham et al., "Weeds in row crops-recommended practices", Research Report, Southern Weed Conference, Jan. 1966, page 47.

Worsham discloses little more than what appellants have acknowledged in their specification to be prior art—namely, that a mixture of Diphenamid and DNBP has been recommended for control of weeds in row crops of peanuts by application when the ground cracks as peanuts emerge. Worsham is silent as to the carrier for the disclosed herbicide combination. Appellants contended below, as they continue to urge here, that the herbicide actually used by Worsham was a so-called "tank mix"—a mixture of a wettable powder of Diphenamid and an aqueous solution of DNBP alkanolamine salt, both available commercially at that time and mixed with water in the field just prior to application. The Patent Office has not questioned appellants' assumption, and we will treat their representation as true for purposes here.

Lemin discloses herbicidal compositions comprising Diphenamid and a particular triazine derivative for use in controlling weeds in crop and turf fields. According to Lemin, those compositions may take the form of solutions, emulsions, suspensions, dispersible powders, emulsifiable concentrates, granular formulations or dusts containing (1) both active ingredients in dispersed or readily dispersible form and (2) a carrier. Further, says Lemin, "when general herbicidal activity is desired, a phytotoxic carrier, for example, high boiling mineral oil fractions or chlorohydrocarbons can be used." Lemin prepares his emulsifiable concentrates by dissolving Diphenamid, the triazine and a surfactant in a water-immiscible solvent carrier, the latter being exemplified by various ketones, aromatic hydrocarbons and ethylene dichloride. A cosolvent can be used "if desired." It is clear from Lemin that Diphenamid was known at the time of appellants' invention to be soluble in such chlorohydrocarbons as ethylene dichloride or methylene chloride.

Pohland discloses the addition of chloroform to a mixture containing Diphenamid and benzene "to render the mixture homogeneous"; thereafter, "[t]he *solvents* were removed by evaporation." (Emphasis supplied.) The board found —properly, we think—that Pohland evidences that those in the art knew that "diphenamid is soluble in chloroform."

## THE DECISION OF THE BOARD

The board sustained the rejection of all claims over Worsham in view of Lemin or Pohland. In brief, the board concluded that the use of such chlorohydrocarbon solvents as methylene chloride or chloroform, in which Diphenamid is known to be soluble, as the solvents for the Worsham herbicidal mixture would be obvious to one of ordinary skill in the art within the ambit of 35 U.S.C. § 103. It found an affidavit submitted by appellants under Patent Office Rule 132, designed to show that the claimed compositions and method possess unobvious properties and produce unobvious results vis-à-vis the "tank mix" of Worsham to be "not * * * persuasive of the claims' patentability * * *."

## OPINION

We think that the knowledge which the references evidence was in the hands of one of ordinary skill in the art at the time appellants' invention was made is sufficient to establish—at least prima facie—that the claimed subject matter

as a whole would have been obvious at that time. By January 1966, Worsham had disclosed to the herbicide art that Diphenamid and DNBP, apparently in "tank-mix" form, was an efficacious combination for the control of weeds in peanut crop rows. By that time, those in the art also knew, as evidenced by Lemin, that Diphenamid together with a different herbicide was useful for weed control in crop fields in either dispersible powder (tank-mix) form or in emulsifiable concentrate form, with the chlorohydrocarbon ethylene dichloride indicated as a suitable solvent in preparing the emulsifiable concentrate. The conclusion is inescapable, we think, that the preparation and herbicidal use of an emulsifiable concentrate containing Diphenamid, DNBP and a chlorohydrocarbon solvent such as ethylene dichloride, methylene chloride or chloroform would similarly have been obvious to one of ordinary skill, particularly in light of the further disclosure of Lemin and Pohland that those chlorohydrocarbons act as solvents for at least Diphenamid.*

▇ Appellant argues that Lemin's Example 1 discloses only a "complex solvent system" consisting of naphthalene, isopropanol, xylene and ethylene dichloride for use in preparing his emulsifiable concentrates, and hence does not suggest a simple concentrate containing merely a chlorohydrocarbon solvent. Apart from the fact that appellants' claims do not exclude the presence of other cosolvents in addition to the chlorohydrocarbon solvent, and an example in their specification actually illustrates the use of exylene as part of their composition, we think appellants have effectively ignored other portions of Lemin which reasonably suggest that Diphenamid is soluble in a single chlorohydrocarbon without required addition of further cosolvents. All the disclosure in a reference, not just the specific examples, must be eval-

uated for what it fairly teaches those of ordinary skill in the art. See, e. g., In re Boe, 355 F.2d 961, 53 CCPA 1079 (1966); In re Chapman, 357 F.2d 418, 53 CCPA 978 (1966).

Appellants' remaining argument centers around the affidavit of Vostral, submitted in an effort to show that the emulsifiable concentrates of the claims are more effective in removing weeds from soy bean crops than the "tank mix" combination of Diphenamid and DNBP disclosed and used by Worsham. The pertinent portions of the affidavit are reproduced below:

I compared the herbicidal action of the new emulsifiable concentrate form of Diphenamid and DNBP with these two herbicides alone and in a tank mixed form prepared according to conventional formulations (wettable powder of Diphenamid and aqueous triethanolamine salt of DNBP). The four herbicidal formulations were applied to field plots having areas of 200 ft.². The plots were 10 ft. wide and 20 ft. long, and there were three replications for each treatment including three untreated check plots. The soil in the plots was prepared for seeding and soybeans were planted in all plots the first week in June. The herbicidal test formulations were applied broadcast over all foliage three weeks later. The soybeans and weeds had emerged and were growing actively. The plots were in a field having a heavy infestation of ragweed lambsquarters, and pigweed. Seven weeks later, the fresh weights of soybeans and weeds were measured on an area 3.3 ft. x 20 ft.—66 ft.²—(two crop rows, 36" row spacing). The three untreated check plots averaged 8.5 lbs. of weeds, fresh weight and 24.2 lbs. soybeans. These average amounts were each assigned the unitary value 100, and the herbicide-treated plots

---

* In their brief, appellants raise no issue with the board's finding that there is "no reason to expect any problem" as to the solubility of DNBP in various chlorohydrocarbons.

were compared in terms of percentage of the untreated averages.

The results were as shown in the table:

| Treatment and Rate in lbs. active ingredient per acre | | Weeds | Soybeans |
|---|---|---|---|
| Check Plots | | 100 (8.5 lbs.) | 100 (24.2 lbs.) |
| Diphenamid + DNBP + Chloroform | 1.0 + 0.75 | 74% | 88% |
| | 2.0 + 1.5 | 38 | 74 |
| | 4.0 + 3.0 | 21 | 57 |
| Diphenamid alone | 1.0 | 69 | 96 |
| | 2.0 | 97 | 92 |
| | 4.0 | 73 | 92 |
| DNBP alone (aqueous solution of triethanolamine salt-Preemerge ®) | 0.75 | 87 | 84 |
| | 1.5 | 61 | 78 |
| | 3.0 | 77 | 82 |
| Diphenamid + DNBP (Tank mix of 50 W. Diphenamid and Preemerge ®) | 1.0 + 0.75 | 75 | 89 |
| | 2.0 + 1.5 | 58 | 83 |
| [A8046] | 4.0 + 3.0 | 57 | 83 |

■ The examiner and board were of the view that the affidavit results are insufficient to overcome the prima facie case of obviousness established by the references, Vostral's conclusions and appellants' contentions to the contrary notwithstanding. We agree. As the board noted, the affidavit data shows that application of the appellants' herbicidal composition at a rate of 1.75 lbs./acre total active ingredient "gives results substantially identical * * *" to those obtained when the prior art "tank mix" composition is applied at that rate. Composition claims 1–5 and process claims 10–13 contain no limitation concerning the amount of Diphenamid and DNBP herbicidal ingredient in the composition or the amount of those active ingredients applied per acre in carrying out the process. The limitations appearing in composition claims 6–9 and process claim 14 pertaining to a ratio of Diphenamid to DNBP of 2:1.5 are of no avail to appellants either, for such compositions can readily be applied to weeds at a rate of 1.75 lbs. total active ingredient/acre, the rate at which the affidavit shows no nonobvious results are obtained. Clearly, appellants' objective evidence of nonobviousness is not commensurate in scope with claims 1–14 which the evidence is offered to support. See In re Tiffin, 448 F.2d 791, 58 CCPA 1420 (1971), modifying 443 F.2d 394, 58 CCPA 1277 (1971) and cases therein.

With respect to process claims 15 and 16, which do recite that 2.0 lbs. Diphenamid and 1.5 lbs. DNBP (or 4.0 and 3.0 lbs., respectively, in claim 16) are applied per acre, somewhat different considerations apply. Both the examiner and board observed that several references of record, not heretofore mentioned, indicate that chlorohydrocarbons are themselves herbicides, and that appellants have provided no data as to the per se herbicidal activity of the chlorohydrocarbon solvent which is utilized in the emulsifiable concentrate employed in appellants' process. While appellants deprecate those references as "ancient" history and the epitome of "primitiveness," it should be noted, as we pointed out earlier, that a reference of relatively recent vintage—Lemin itself—discusses the "phytotoxic" effect of chorohydrocarbon herbicide carriers. The record before us does not contain clear and convincing evidence that any increase in herbicidal activity shown by appellants' emulsifiable concentrate compositions when applied at rates of 3.5 and 7.0 lb./acre total active ingredient is not due at least in part to the presence of the chlorohydrocarbon solvent in that composition. We think that evidentiary defect is fatal to appellants' case. See, by way of analogy, In re Lemin, 408 F.2d 1045, 56 CCPA 1050 (1969).

The decision is affirmed.

Affirmed.