**In re Dale M. KOHLER and Martin F. Littmann.**

**Patent Appeal No. 8871.**

United States Court of Customs and Patent Appeals.

April 12, 1973.

Rehearing Denied July 26, 1973.

John W. Melville, Charles H. Melville, Gibson R. Yungblut, Cincinnati, Ohio, Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, adhered to on reconsideration, affirming the rejection of all the claims of appellants' application, serial No. 583,459, filed September 30, 1966, for "Production of Cube-on-Edge Oriented Silicon-Iron," as unpatentable under 35 U.S.C. § 103. We reverse.

## THE INVENTION

The invention relates to a method of producing cube-on-edge oriented silicon-iron sheet or strip for magnetic purposes. Claim 1 is illustrative:

1. In a method for producing cube-on-edge silicon-iron having a silicon content of from about 1.8% to about 4% and processed by steps including hot rolling to intermediate gauge, cold rolling to final gauge, decarburizing and annealing whereby to effect secondary recrystallization favoring growth of cube-on-edge nuclei by grain boundary energy, the improvement comprising in combination therewith the step of heating said silicon-iron having an oxygen content no greater than .0045% to a temperature of from 2100° F. to not more than 2400° F. immediately prior to said hot rolling step.

At the time of this invention, use of the well-known procedure outlined in the preamble of claim 1 entailed heating the slab or ingot of silicon-iron to temperatures as high as 2550° F. prior to the hot rolling step. It was disclosed by Littmann (co-inventor here) and Heck in U. S. Patent 2,559,340 that improved magnetic properties resulted from heating at this point to the highest tempera-

ture possible without "burning," [1] i. e. from 2300° to 2550° F. Use of these extremely high temperatures, however, was attended by serious disadvantages. As pointed out in appellants' specification, the most significant was slag formation at temperatures above about 2400° F., requiring periodic shutdown of the furnace for slag removal.

Appellants' contribution lies in the discovery of a relationship between the initial oxygen content of the silicon-iron and the requisite temperature in this heating step prior to hot rolling. They have found that if the oxygen content is no greater than .0045% (preferably .0030%), the heat treatment can be conducted at a temperature of from 2100° to 2400° F. (preferably 2300° to 2400° F.) and result in an end product having magnetic properties equivalent to those previously attained by the use of the highest possible temperatures.

Appellants have agreed that all of the claims must stand or fall with claim 1, wherein this basic concept is set forth. Accordingly, we confine our review to the rejection of claim 1.

## THE DECISION BELOW

The prior art relied upon consists of Littmann et al. (Littmann) [2] and Boni et al. (Boni).[3] Both patents are the property of the assignee of the present application.

As mentioned, Littmann is directed to processes for producing cube-on-edge oriented silicon steel wherein heating prior to hot rolling involves the use of temperatures up to 2550° F. The various processes to which this preliminary treatment is said to be applicable include those having the present combination of hot rolling, cold rolling, decarburizing and annealing steps. Appropriate starting materials are describ-

ed simply as "silicon steel in general having a silicon content of about 2.5 to 4.0%." No particular oxygen content is disclosed. The key to the patentees' invention is stated thusly:

\* \* \* We have found that excellent results may be attained by heating the slabs to temperatures lying substantially between 2300° F. and about 2550° F. with the emphasis on the higher temperatures for better results.

Those results are specified as an "enhancement of the perfection of the preferred orientation and hence a higher permeability in the rolling direction." Permeability is a measure of effectiveness as a path for magnetic lines of force.

Boni discloses a method for the production of silicon-iron having a low oxygen content, i. e., .0040% or less. It is further taught that said silicon-iron can "by known rolling and annealing steps" be converted into cube-on-edge oriented stock with "improved magnetic properties." The present specification readily acknowledges the Boni process as a means for obtaining the required starting material.

Claim 1 was rejected as unpatentable under 35 U.S.C. § 103 over Littmann in view of Boni. From the combined teachings of the references, the examiner considered it " \* \* \* obvious to one of ordinary skill in the art to process the silicon steel of Boni et al. according to the process of Littman et al. \* \* \*." Appellants' use of temperatures of 2100° to 2400° F. was not found to be "patentably inventive" because of the explicit teaching of Littmann that temperatures in the range of 2300° to 2400° F. were operable, although higher temperatures were preferred. The absence of a teaching of any relationship between oxygen content and heating tem-

---

1. "Burning" is defined in the patent as "a progressive intergranular disintegration probably due to oxidation or to the migration of intergranular substances or both, and usually occurs in the neighborhood of 2600° F. in an oxidizing atmosphere."

2. U.S. 2,599,340, issued June 3, 1952.

3. U.S. 3,305,354, issued February 21, 1967 (filed December 17, 1964).

perature was considered "not relevant to the issue of obviousness." Nor was the case for patentability found to be given any support "where the new or improved results clearly appear to be due solely to the quality of the material used."

In sustaining the rejection, the board stressed that:

\* \* \* The fact that commercial use of the Littmann et al. process has been carried out at the upper end of the 2300–2550° F. range in no way affects the disclosure of this reference \* \* \*.

## OPINION

We find it appropriate to combine the teachings of Littmann and Boni, in view of the specific statement in the latter that this low oxygen content material could be processed by known methods for producing cube-on-edge oriented stock. Hence it would be at least prima facie obvious to subject such a starting material to a heat treatment employing temperatures of 2300° to 2550° F. prior to hot rolling. Anticipated advantages inherent in the use of this particular silicon steel in the Littmann process would not suffice to overcome the obviousness of the combination.

But we cannot adopt the position taken by the Patent Office that treatment of the Boni product by the Littmann process is all that is involved in the present invention. Due consideration must be given to the relationship set forth in claim 1 between the oxygen content of the starting material and the temperature *required* in the heat treatment prior to hot rolling. Appellants have presented objective evidence in the specification (Table 1) indicating that products having substantially equivalent permeability values can be obtained whether the heat treatment is carried out at 2100° F., 2400° F. or 2500° F., provided the oxygen content is very low. This evidence cannot be ignored. There is nothing in the record before us to contradict it. The possibility of avoiding slag formation *without* affecting the quality of the final product is indeed significant and makes the present invention more than merely a treatment of the Boni product by the Littmann process.

The only question remaining is whether such a relationship would have been obvious to one of ordinary skill in view of the teachings in the cited prior art. *All* the disclosure in a reference must be evaluated for what it fairly teaches, not just the preferred embodiments. See In re Snow, 471 F.2d 1400 (CCPA 1973); In re Boe, 355 F.2d 961, 53 CCPA 1079 (1966). Yet we find no suggestion in either Littmann or Boni of appellants' invention. The entire Littmann disclosure is directed toward the correlation of improved permeability with the highest possible temperature prior to hot rolling. No teaching in Boni has been pointed out by the Patent Office which would cause one to question the applicability of this correlation to a low oxygen content material. We agree with appellants that the obvious treatment of the Boni material would be at the highest possible temperature without burning according to the Littmann process. Accordingly, it was error to hold the claimed subject matter obvious in view of the prior art.

The decision of the board is *reversed.*
Reversed.