**Alan SUSSMAN, Appellant,**

v.

**Irvin J. COOPER, Appellee.**

**Patent Appeal No. 76–543.**

United States Court of Customs and Patent Appeals.

July 15, 1976.

Rehearing Denied Sept. 23, 1976.

Carl L. Silverman, East Windsor, N. J., attorney of record, for appellant; A. Russinoff, Princeton, N. J., of counsel.

Terryl K. Qualey, St. Paul, Minn., attorney of record, for appellee (Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn.)

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

Senior party, Sussman,[1] appeals from the decision[2] of the Board of Patent Interferences awarding priority of the two counts to junior party, Cooper.[3] We reverse.

*The Invention*

The invention comprises a display device (as shown in Fig. 1 of the Cooper patent) which illuminates an article 24 containing a design 25 positioned between the observer 26 and a light source 10.

1. Involved in the interference on application serial No. 166,192, filed on July 26, 1971, for "Liquid Crystal Device," and accorded benefit of application serial No. 852,664, filed August 25, 1969.

2. In interference No. 98,355.

3. Involved in the interference on U. S. patent No. 3,653,138, for "Contrasting Background Display," issued on April 4, 1972, on application serial No. 27,843, filed April 13, 1970.

**FIG. 1**

The device comprises a sheet 12 (containing a plurality of parallel opaque louvers 16, set in a transparent matrix), positioned between the article containing the design and the light source. The louvers are at such an angle to the plane of the sheet that transmission of light passing perpendicularly to the plane of the sheet is prevented. In this way, light from the light source illuminates the design, yet the louvers block the light source from view. According to Cooper's specification, the light source *preferably* comprises a cylindrical lamp 18, a semicylindrical reflector 20 adjacent the lamp, and a parabolic reflector 22 positioned to cooperate with the reflector 20 to direct light produced by the lamp into paths parallel to the planes of the louvers and between the louvers. Count 1 is illustrative:

1. A display device comprising:

a sheet of louvered material having a plurality of generally parallel thin opaque louvers set in a transparent matrix at an angle to the faces of said sheet, said louvers being spaced with opposed edges of adjacent louvers at least contacting a single plane normal to said faces to prevent transmission of light striking said sheet perpendicular to said faces,

a light source positioned to one side of said sheet of louvered material to direct light through said matrix between said louvers along paths generally parallel to said louvers, and

an article to be displayed positioned on the opposed side and parallel to said sheet of louvered material to be illuminated by radiation from said light source passing through said matrix between said louvers, said article including a differential pattern of light diffusive and transparent areas defining the indicia to be displayed and said differential pattern being at least partially of contrasting coloration to said opaque louvers so that said differential pattern is visible both from ambient light and under illumination.

Count 2 differs from Count 1 in reciting a nematic liquid crystal as the article containing the design.

*Proceedings Below*

The interference was declared on two counts, which are claims copied from Cooper's patent. Sussman was accorded the benefit of his parent application and thus was made the senior party. Cooper moved under 37 CFR 1.231(a)(4) to deny Sussman the benefit of his parent application. In denying the motion, the examiner stated:

[T]he counts do not require means such as a reflector to direct light but merely require light to be directed through a matrix between louvers of said sheet along paths generally parallel to said louvers. This requirement of the counts is deemed satisfied by the combination of light source and louvered sheet disclosed by Sussman in his parent application . ..

According to the board, the sold issue was whether Sussman's parent application discloses the subject matter of the counts.[4] More particularly, the board stated the issue to be whether Sussman's parent application discloses the limitation of—

> a light source positioned to one side of said sheet of louvered material to direct light through said matrix between said louvers along paths generally parallel to said louvers.

The board majority, after finding the above-quoted language to be unambiguous, found that the parent application did not disclose this limitation. Using the definition of "direct" in *Webster's Third New International Dictionary* (1971),[5] it found that "the light source must exert a control over the direction of travel of light," and that "a bare fluorescent tube as disclosed in the parent application of Sussman, without a reflector or other means for controlling the direction of travel of the light, fails to perform this function."

In a separate concurring opinion, the second board member looked to the meaning that the "light source" limitation would have in the particular technology involved, relied upon "authoritative technical works,"[6] and found that the language "would indicate sufficient structure to both emit light and to collimate the light so emitted; it connotes some additional structure to act upon the direction of propagation of the light, once emitted."

The third member of the board dissented, saying:

> I cannot agree with [the majority's] interpretation of the counts. I refuse to believe that the broad expression "light source" in the counts, which reads on any light source, must comprise a cylindrical lamp, a semicylindrical reflector adjacent the lamp and a parabolic reflector as shown in the Cooper patent . . ..

He construed the limitation to require " 'a light source *positioned* . . . to direct light . . . ,' " and found that "[t]he Sussman light source emits parallel light rays, the proper *positioning* to one side of the louver[s] *being the means to direct the light.*" (Emphasis added.)

## OPINION

■ The precise issue is whether there is sufficient support for the counts in Sussman's parent application to require that he be awarded priority. On this issue, Sussman has the burden of proof. *Wagoner v. Barger,* 59 CCPA 1213, 463 F.2d 1377, 175 USPQ 85 (1972). Although the parent application need not describe the invention claimed in the later application *in haec verba,* the description must be sufficient for one skilled in the art to recognize the invention of the counts.

■ Sussman argues that the "light source" limitation, being very broad, only requires *positioning* of the light emitter (*e. g.,* the fluorescent tube of his parent application) in order "to direct light." Agreeing with the board majority, Cooper contends

---

4. The relevant portion of Sussman's parent application reads as follows:

In operation of the device, a light source, such as a fluorescent tube, is disposed behind the device. The light source illuminates the device through the rear side thereof, but, owing to the presence of the louver means, only those light rays which are substantially parallel to the louver layers pass between the layers to reach the device. [Reference citations omitted.]

5. [T]o cause to turn, move, or point undeviatingly or to follow a straight course with a particular destination or object in view: a: to dispatch, aim, or guide usu. along a fixed path.

6. E. Brown, *Modern Optics* 4, 138 & 444–46 (1965) and M. Garbuny, *Optical Physics* 91 & 240–41 (1965).

that structure in addition to the light emitter is required to satisfy the limitation.

Giving the language of the counts their broadest reasonable construction, *Fontijn v. Okamoto,* 518 F.2d 610, 186 USPQ 97 (CCPA 1975), we are satisfied that, as stated by the dissenting member of the board, the *positioning* of the light source acts "to direct light through said matrix between said louvers along paths generally parallel to said louvers." We note that the light emitter directs light through the matrix only when it is properly positioned—that is, if the emitter were positioned in such a way that the light rays traveled perpendicularly to the louvers, no light would be directed between the louvers and through the matrix. Even where additional light-directing structure is used, this structure must be *positioned* so that the light is directed between the louvers.

Cooper argues that the light emitter per se cannot act "to direct light," since it merely randomly emits light and does not control the direction of the light. However, this misses the point that it is the *positioning* of the light emitter that directs the light between the louvers and through the matrix.

Nor can we agree with Cooper that the "light source" limitation requires structure in addition to a light emitter "to direct light." To interpret the limitation as reading only on the combination of a light emitter and means for controlling the direction of the light would be contrary to the well-established rule that limitations not clearly included in a count will not ordinarily be read into it. *Fontijn v. Okamoto, supra.* Such additional direction-controlling means is not necessary to produce an operative display device and, at most, is only a desirable accessory which makes the device a more efficient utilizer of the emitted light.

Cooper also argues that if the positioning of the light source is a reasonable interpretation of the counts, the counts must have a latent ambiguity, since Cooper's construction of the counts requiring structure in addition to the light source to direct light is also reasonable, and reference to Cooper's specification is proper to resolve this latent ambiguity, citing *Stansbury v. Bond,* 482 F.2d 968, 179 USPQ 88 (CCPA 1973). However, broad language in a count is not ambiguous simply because it is capable of being read on several embodiments. *Fontijn v. Okamoto, supra.* Cooper's interpretation is simply not the broadest reasonable construction of the language of the counts.

Cooper further argues that the prior art patent to Miller [7] shows that a construction of the counts to require additional structure for directing the light is necessary, since without such structure the counts would not be patentable thereover. Although resort to the prior art may be proper to determine the meaning of language in a count where the language is ambiguous *and* the prior art was cited in ex parte consideration of the application from which the count was derived, *Holdsworth v. Goldsmith,* 29 CCPA 1047, 129 F.2d 571, 54 USPQ 90 (1942), neither of these criteria is present in this case.

Cooper's contention that the additional subject matter in Sussman's continuation-in-part application (a display device having collimating means) shows that the parent application did not satisfy the "light source" limitation is not persuasive. The addition merely shows that the parent application did not disclose collimating means—not that it failed to disclose means satisfying the "light source" limitation of the counts.

Since Sussman has shown that his parent application discloses positioning of the light source to direct the light between the louvers generally parallel to the louvers, we hold that Sussman's parent application constitutes a constructive reduction to practice of an embodiment of the counts and, therefore, provides sufficient support to require that he be awarded priority.

Accordingly, the decision of the board is *reversed.*

*REVERSED.*

---

7. U.S. patent No. 2,398,799, issued April 23, 1946.