Application of Wolfgang W. BODE et al.

Patent Appeal No. 76–644.

United States Court of Customs
and Patent Appeals.

Feb. 24, 1977.

Jim Zegeer, Washington, D.C., Donald Keith Wedding, Toledo, Ohio, attys. of record, for appellants.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents, R. V. Lupo, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

██ This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board) affirming the rejection under 35 U.S.C. § 102 of claims 1–8,[1] all of the claims in application serial No. 314,655, filed December 13, 1972, for "Gaseous Display/Memory Device."[2] We affirm.

*The Invention*

The invention relates to gaseous discharge display devices having an electrical memory and the capability of producing a visual display, as shown by appellants' drawings below:[3]

As illustrated, the device comprises a continuous uniform layer of ionizable gas (12) sandwiched between a pair of dielectric layers (10, 11), with each dielectric layer backed by a conductor array (13, 14). The conductor elements (13′–1, . . ., 13′–C) of one of the arrays extend at a different angle from the elements (14′–1, . . ., 14′–H) of the other array, so that imaginary projections (onto an imaginary plane parallel to the two conductor arrays) of the elements of one array intersect with such projections of the elements of the other array. Each space between the dielectric surfaces that corresponds to each such intersection constitutes a display cell (30),

with the portions of the dielectric surfaces that correspond to each such intersection forming opposed pairs of charge storage areas.

In operation, when a potential is applied to specific conductor elements such as 13′–C and 14′–H, there is a potential difference across the corresponding display cell, the gas contained in this cell breaks down into a plasma, and the electrons and ions flow toward the corresponding conductors. This activity produces light and, thereby, a visual display. Also, the electrons and ions flow to a position adjacent the respective dielectric layers and are stored there, thus forming an electrical memory.

---

1. Claim 3 recites that it is dependent on itself. Appellants note in their brief, however, that claim 3 should be dependent on claim 2, and we have so treated it.

2. This application has an effective filing date under 35 U.S.C. § 120 of parent application serial No. 686,384, filed November 24, 1967.

3. Reference characters identifying elements not referred to in discussion have been deleted.

**658**

Claim 1 is illustrative of the invention:

1. A display device comprising first and second pluralities of conductors, an array of display cells individually defined by the intersection of one of said first plurality of conductors and one of said second plurality of conductors, and means disposed between said first and second pluralities of conductors including first and second dielectric means separated by a substantially uniform continuous [sic] layer of gaseous display material.

*The Reference*

United States patent No. 3,559,190[4] to Bitzer et al. (Bitzer) for "Gaseous Display and Memory Apparatus" contains the following drawings:[5]

The Bitzer device includes two arrays of conductors (30 and 32) located on the outer surfaces of insulating layers (34 and 36, respectively). There is an apertured insulating member (perforated plate 22) located between the two insulating layers. This member is so positioned that each aperture extends from the insulating layer 34 adjacent one of the conductors of the array 30 to the insulating layer 36 adjacent one of the conductors of array 32, thus forming an individual cell 24 between the conductors. The conductors are external to the cells, which contain "a suitable discharge responsive gas."

The following statement appears in the Bitzer patent:

> In fact it is possible that an array of conductors can be externally placed on each side of electrically isolated but not physically isolated gas "cells," such as in an elongated tube or panel filled completely with a homogeneous gas medium, so as to form discrete wall charges on nonconductive walls adjacent selected paired conductors and the apparatus still operated according to this invention.

Later in the patent, Bitzer expands on this disclosure:

> [A]s mentioned previously an array of conductors can be externally placed on each side of electrically isolated but not physically isolated cells. As an example, there can be provided a homogeneous gaseous medium within non-conductive walls and intermediate a paired array of conductors which are adjacent the walls and external to the gaseous medium, so as to be conductively isolated from the gaseous medium. In this alternative embodiment the "cells" can be thought of as not being physically isolated. However, they are definitely electrically isolated since discrete wall charges can be selectively formed in accordance with this in-

---

**4.** Issued January 26, 1971 on application serial No. 613,693, filed December 22, 1966, which is a continuation-in-part of application serial No. 521,357, filed January 18, 1966, for "Gaseous Display and Memory Apparatus."

**5.** Reference characters identifying elements not referred to in discussion have been deleted.

vention on the non-conductive cell walls adjacent each of the paired conductors.

The Bitzer parent application, serial No. 521,357, does not contain this expanded disclosure. It states:

In figure 2 the external relation of the conductors 30 and 32 to the gas cell defined by the apertures 24 is clearly indicated. It must be realized, of course, instead of the separate insulating members, suitable construction techniques may be utilized to provide an isolated gas cell in which the control electrodes are mounted external thereto. In fact it is possible that an array of conductors can be externally placed on each side of electrically isolated but not physically isolated gas cells and the apparatus still operated according to this invention. Thus, in any case, the capacitances through the insulating member isolate the cells from one another and therefore remove the ambiguity and former problems experienced in addressing gaseous discharge arrays of the prior art.

This portion of the Bitzer parent application is essentially similar to the first-quoted portion of the Bitzer patent, differing therefrom mainly in omission of quotation marks around the word "cells" and omission of specific examples of "electrically isolated but not physically isolated gas cells," namely: "an elongated tube or panel filled completely with a homogeneous gas medium."

### Proceedings Below

The examiner rejected claims 1–8 (which had been copied from United States patent No. 3,671,938[6]) under 35 U.S.C. § 102 as anticipated by Bitzer. He noted that al-though appellants had filed an affidavit under 37 CFR 1.131 which alleged a date of invention earlier than the actual filing date of the Bitzer patent, this was not sufficient to overcome the patent since the "Bitzer et al. disclosure applicable to the present claims is found in the parent application of Bitzer et al. as well as [in] the patent to Bitzer et al." and "the effective date of the Bitzer et al. [sic, patent] is the date of the parent application, SN 521 357, January 18, 1966, referred to in said patent."

The board, noting that the affidavit under 37 CFR 1.131 "establishes conception and reduction to practice before December 22, 1966, but not before January 18, 1966," stated that its problem was "to determine whether the examiner was justified in pushing the effective filing date of Bitzer et al. to the earlier filing date of the parent application." It held the examiner to be so justified, finding that the key language in each of the parent claims 1, 2, and 5 is "continuous layer" and that the above-quoted portion (beginning with "In fact") of the Bitzer parent application "is a clear teaching that physical isolation is not required and the layer may be 'continuous'." Accordingly, it affirmed the decision of the examiner.

### OPINION

■ The question is whether the Bitzer patent anticipates appellants' claimed invention, notwithstanding that appellants have established a date of invention prior to the actual filing date of the application that matured into the Bitzer patent. The answer depends on whether the Bitzer parent application contained an enabling disclosure (35 U.S.C. § 112, first paragraph)[7] of the subject matter of the appealed claims that was carried over to the Bitzer patent,[8] so

---

6. Issued June 20, 1972, to Dinh-Tuan Ngo on application serial No. 821,410, filed May 2, 1969.

7. As of the parent's filing date. See *In re Hafner*, 410 F.2d 1403, 1405, 56 CCPA 1424, 1426, 161 USPQ 783, 785 (1969); *In re LeGrice*, 301 F.2d 929, 49 CCPA 1124, 133 USPQ 365 (1962).

8. *In re Lund*, 376 F.2d 982, 988, 54 CCPA 1361, 1369, 153 USPQ 625, 630–31 (1967); *Goodyear Tire & Rubber Co. v. Ladd*, 121 U.S.App.D.C. 275, 349 F.2d 710, 146 USPQ 93 (1965), *cert. denied*, 382 U.S. 973, 86 S.Ct. 536, 15 L.Ed.2d 465, 148 USPQ 771 (1966).

that the parent's filing date is the effective date of the Bitzer patent as a reference under 35 U.S.C. § 102(e).

As can be seen in the above-quoted portions of the parent application and the patent, the disclosure of a display/memory device ("operated according to this invention") comprising "an array of conductors" which are "externally placed on each side of electrically isolated but not physically isolated gas cells" was carried over from the Bitzer parent application to the Bitzer patent. This disclosure clearly sets forth the subject matter of appellants' claimed invention.

■ We conclude that this disclosure, carried over from the Bitzer parent application, also was enabling as of the filing date of that application. We are satisfied that one skilled in the art would have known that forming gas cells which were not physically isolated would entail removal of the perforated plate 22 (the apertured insulating member); that means would be required to maintain a uniform spacing between the two outer insulating layers (34 and 36) and to support them; and that means would be required to seal the gas between the two outer insulating layers. We are further satisfied that one skilled in the art, possessed of such knowledge, would have been able to make [9] the display/memory device claimed by appellants.

■ Appellants contend that the Bitzer patent does not show or suggest means for maintaining a spacing between and for supporting the outer insulating layers other than the perforated plate 22, and that it does not show or suggest means for maintaining the spacing uniform. However, one skilled in the art would be expected to have sufficient basic knowledge to construct such means, the structure of which appears to be simple. As this court said in *In re Wiggins*, 488 F.2d 538, 543, 179 USPQ 421, 424 (Cust. & Pat.App.1973):

Every patent application and reference relies to some extent upon knowledge of persons skilled in the art to complement that disclosed in order that it be "enabling" within the meaning of § 112 and to satisfy the requirements of a reference under § 102.

■. Appellants also contend that the Bitzer parent application does not contain an enabling disclosure of how to form a substantially uniform continuous layer of gaseous display material. However, we are persuaded that removal of the perforated plate 22 would necessarily produce such a layer of gaseous display material. The specific limitation need not be disclosed in haec verba in the reference. Cf. *Binstead v. Littmann*, 242 F.2d 766, 44 CCPA 839, 113 USPQ 279 (1957).

■ Appellants further contend that the expanded disclosure in the Bitzer patent demonstrates the inadequacy of the Bitzer parent application. However, inclusion of examples of specific embodiments in the expanded disclosure does not show that the parent application was inadequate for one skilled in the art to make appellants' claimed invention. See *Sussman v. Cooper*, 537 F.2d 531, 534, 190 USPQ 418, 421 (Cust. & Pat.App.1976).

■ Appellants point to a board opinion in a companion application [10] (assigned to the assignee of the instant application), which interpreted the language of the Bitzer patent and found that it did not teach a specific configuration (*i. e.*, glass capillary tubes) for the gas cells, and argue that this opinion shows that neither the Bitzer patent nor the Bitzer patent application is enabling with respect to their claimed invention. However, what the Patent and Trademark Office has previously determined in a case involving a different factual situation is not (absent a collateral estoppel situation) binding in a later case. See

9. See *In re Hafner, supra.*

10. Serial No. 86,094, filed November 2, 1970.

*In re Willis,* 455 F.2d 1060, 59 CCPA 822, 172 USPQ 667 (1972). A teaching of a specific configuration is not required for enablement here, since appellants do not claim a specific configuration. See *Sussman v. Cooper, supra.*

Appellants also point to language contained in the following statement from the parent application which immediately precedes the disclosure of "not physically isolated gas cells":

> It must be realized, of course, instead of the separate insulating members, suitable construction techniques may be utilized to provide an isolated gas cell in which the control electrodes are mounted external thereto.

They argue that this language "in context was for the purposes of eliminating separate insulating members and providing a single insulating member" and, thus, does not suggest the first and second layers of dielectric material required by the claims. First, the quoted language clearly indicates that the alternative to separate insulating members is optional. Second, the claims do not require such layers to be completely *separate* members, as long as they are layers on each side of the layer of gaseous display material. Last, the parent application discloses an array of conductors "externally placed on each side of . . . gas cells" that are not physically isolated, which would require dielectric layers on each side of the layer of gaseous material to confine the gaseous material.

Appellants say that the disclosure of "not physically isolated gas cells" does not necessarily mean that the perforated plate is removed, since this limitation could be met by providing gas passageways between the individual cells "to physically connect them." However, this contention is contradicted by appellants' own specification, which states that "the art recognized that although physically isolated, individualized cells should have relatively free gas passage between all cells so as to assure at least uniform gas pressure throughout the panel and each individual cell." This statement shows that cells having gas passageways would still be "physically isolated," *as the term is understood in the art,* according to appellants. *Cf. In re Hughes,* 345 F.2d 184, 187–88, 52 CCPA 1355, 1359–61, 145 USPQ 467, 470–71 (1965).

Finally, appellants point out that neither the Bitzer parent application nor the Bitzer patent shows a drawing of the presently claimed subject matter. However, a drawing is not required; also, the reference must be evaluated for all it teaches and is not limited to its specific embodiments. *In re Snow,* 471 F.2d 1400, 176 USPQ 328 (Cust. & Pat.App.1973).

In view of the foregoing, we hold that the Bitzer patent anticipates appellants' claimed invention.[11]

The decision of the board is *affirmed.*

*AFFIRMED.*

---

11. Appellants have not argued dependent claims 3–4 and 6–8 separately from independent claims 1–2 and 5. Accordingly, these dependent claims fall with the independent claims. See *In re Wiechert,* 370 F.2d 927, 54 CCPA 957, 152 USPQ 247 (1967).